

FILED
CLERK, U.S. DISTRICT COURT

06/13/2024

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ AP _____ DEPUTY

1  Jeff Macy "In Pro Per"
2  P.O. Box #103
   Twin Peaks, Ca. 92391
   Telephone: (909) 744 -8480
3  Email: macybuilders@yahoo.com
       PLAINTIFF IN PRO PER
4              FIRST AMENDED COMPLAINT
         THE UNITED STATES DISTRICT COURT
5     CENTRAL DISTRICT OF CALIFORNIA EASTERN DIVISION
                    COMPLAINT
6

| | |
|---|---|
| 7  Jeff Macy, as an individual,<br><br>8  PLAINTIFF,<br><br>9  vs.<br><br>10  COUNTY OF SAN BERNARDINO BOARD OF SUPERVISORS, a public entity.<br><br>11  DEFENDANTS. | Case No.: TBD **5:24-cv-01267-RGK(BFM)**<br><br>COMPLAINT FOR DAMAGES & DEMAND FOR JURY TRIAL FOR:<br>**(1)** Municipal & Supervisorial Liability (42 U.S.C. § 1983).<br>**(2)** Intentional Infliction of Emotional Distress.<br>**(3)** Invasion of Privacy.<br>**(4)** Extortion.<br>**(5)** Failure to do Public Record's Requests.<br>**(6)** Negligence. |

14                    **DEMAND FOR JURY TRIAL**

15  PLAINTIFF JEFF MACY, through their undersigned counsel, hereby files this

16  Complaint against Defendants County of San Bernardino Board of Supervisors,

17  inclusive (collectively "Defendants"), alleges as follows:

18

19                    **JURISDICTION & VENUE**

20  1. This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 & 1343(a)

21     (3-4) because Plaintiff assert claims arising under the laws of the United

22     States including 42 U.S.C. §§ 1983 & 1985, the Fourth, Sixth & Fourteenth

23     Amendments of the United States Constitution. This court has

24     supplemental jurisdiction over state law claims pursuant to 28 USC § 1367

25     because those claims are so related to PLAINTIFF'S Federal claims that the

26     claims form part of the same case &/or controversy pursuant to Article III

27     of the United States Constitution.

28                    PAGE 1 OF 16

2. Venue is properly founded in this judicial district pursuant to **28** USC §§ **1391**(b) & (c) in that a substantial part of the events giving rise to the claims in this action occurred within this District & Defendants are subject to personal jurisdiction in this district.

## PARTIES

3. PLAINTIFF JEFF MACY, is a citizen of the State of California, & at all relevant times herein was a resident in San Bernardino County in the State of California.

4. Defendant County of San Bernardino Board of Supervisors is & at all times relevant a public entity located in the County of San Bernardino & existing under the laws of the State of California.

## FACTS COMMON TO ALL CAUSES OF ACTION

5. Each & every allegation set forth in each & every averment & allegation of this pleading hereby is incorporated by this reference in each & every averment & allegation of this pleading.

6. I am informed & believe that Defendants County of San Bernardino Board of Supervisors have not provided some of my public records requests. Defendants county of San Bernardino Board of Supervisors have allowed violations of 4th & 14th amendment rights.

7. There's an important legal principle that says "ignorance of the law is no excuse." You can't defend your actions by arguing you didn't know they were illegal, even if you honestly did not realize you were breaking the law.

## FIRST CAUSE OF ACTION

**Municipal & Supervisory Liability (42. U.S.C. § 1983)**

**(By Plaintiff Against County of San Bernardino Board of Supervisors)**

PAGE 2 OF 16

8. Plaintiff hereby re-alleges & incorporates by this reference, as though set forth in full, the allegations in paragraph 1 through 7, inclusive.

9. On & for some time prior to 2021(& continuing to the present date) Defendants County of San Bernardino Board of Supervisors deprived Plaintiff Jeff Macy of the rights & liberties secured to him by the 4th & 14th Amendments to the United States Constitution, in that said Defendants & their supervising & managerial employees, agents, & representatives acting with gross negligence & with reckless & deliberate indifference to the safety, rights, & liberties of the public in general & of Plaintiff Jeff Macy & of persons in their class, situation & comparable position, in particular, knowingly maintained, enforced & applied an official recognized custom, policy, & practice of:

   (a) Employing & retaining as county officials & other personnel, including County of San Bernardino Board of Supervisors at all times material herein knew or reasonably should have known had propensities for abusing their authority & for mistreating citizens by failing to follow their County Policies;

   (b) Inadequately supervising, training, controlling, assigning & disciplining County of San Bernardino & other personnel, each knew or in the exercise of reasonable care should have known the aforementioned propensities & character traits;

   (c) Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, controlling & disciplining the intentional conduct by County of San Bernardino Board of Supervisors & other personnel.

(d) Failing to adequately train County of San Bernardino Employees & failing to institute appropriate policies regarding constitutional procedures & practices;

(e) Having & maintaining an unconstitutional policy, customs, procedures of using excessive trespassing which is also demonstrated by inadequate training regarding these subjects San Bernardino County Code Enforcement which Macy's won hearing against Code Enforcement & Macy's got a refund on 2/16/2024. The hearing officer administrative hearing letter states

"More likely than not, the citing officer entered, in a de minimis fashion only, upon the Appellant's property when investigating the violations subject of the Citation and did not have consent to enter."

(f) Allowing San Bernardino County Code Enforcement to take anonymous complaints violating the 6th amendment right to confront the witnesses against them.

(g) Allowing Cedar Pines Park Mutual Water Company to illegally put water test equipment on Macy's land, this is a 4th amendment violation. SB County ordinance no. 4289 "...allows pipes & pipelines for any purpose..." this is a governmental taking of land. Macy's had to file a lawsuit against Cedar Pines Park Mutual Water Company due to Board of Supervisors failure & won, Case number: 5:24-cv-00668-AB-SHKx.

(h) Board of Supervisors failed to investigate SB county sheriffs, Plaintiff was arrested on Plaintiff's property for picking up trash. SB county sheriffs allowed cedar pines park mutual water company to trespass on religious non-profit property.

(i) San Bernardino Board of Supervisors has failed to investigate District CSA-18. District CSA-18 has damaged Plaintiff's property, admitted to it. Took down Plaintiff's cables, which caused our lights to be broken, left glass all over our road forcefully. Won't repair Burnt Mill Canyon Road CSA -18 is responsible to repair. Says cannot afford to fix. Has been dumping base rock and trash, water pipes on our property for years without permission. CSA told police they caused destruction of our private property, but Police don't prosecute County.

(j) San Bernardino Board of Supervisors is allowing Land use Services to trespass. Land Use Services Department Code Enforcement Notice of Violation Case#: CSE-2022-11086 on January 11, 2023 by investigating officer: Ambur Scharf. "The indicated violations should be corrected within 31 days from the date of this notice. A re-inspection of this property to verify compliance will be completed after 02/11/2023. Failure to correct the existing violation(s) may result in the issuance of administrative citations and/or civil or criminal prosecution. A lien and a special assessment on the property tax roll may also be placed against the subject property to recover any regulatory costs incurred by the County."

(k) San Bernardino County Public Health Environmental Health Services illegally trespassed on Plaintiff's property on 8/19/20.

(I) San Bernardino Public Works Solid Waste Management Division allows Burrtec trucks to travel, trespass & drive up Augusta Way, a private road without owners consent. Weight damage has been caused to Augusta Way, a private road due to these heavy, environmental hazardous, unsafe pollution, unregulated, Burrtec trucks being allowed from Defendants.

10. Defendants County of San Bernardino Board of Supervisors had either actual or constructive knowledge of the deficient policies, practices, & customs alleged in the paragraphs above. Despite having knowledge as stated above these Defendants condone, tolerated, & through actions & inactions thereby ratified such policies. Said Defendants also acted with deliberate indifference to the foreseeable effects & consequences of these policies with respect to the constitutional rights of Plaintiff Jeff Macy & other individuals similarly situated.

11. By perpetrating, sanctioning, tolerating & ratifying the outrageous conduct & wrongful acts, Defendants County of San Bernardino Board of Supervisors acted with intentional, reckless, & callous disregard for the safety & constitutional rights of Plaintiff Jeff Macy. Defendants County of San Bernardino Board of Supervisors actions were willful, wanton, oppressive, malicious, fraudulent, extremely offensive, & unconscionable to any reasonable person of normal sensibilities.

12. By reason of the aforementioned policies & practices of Defendants County of San Bernardino Board of Supervisors acted with intentional, reckless & callous disregard for the safety & constitutional rights of Plaintiff

Jeff Macy. Defendants County of San Bernardino Board of Supervisors caused Plaintiff Jeff Macy incurred damages in the form of psychological & emotional injuries, including, without limitation, pain & suffering, sleep deprivation, humiliation, all of which are continuing & damaging to reputation. Plaintiff's actual damages will be ascertained at trial.

13. The policies, practices, & customs implemented & maintained & still tolerated by Defendants County of San Bernardino Board of Supervisors acted with intentional, reckless & callous disregard for the safety & constitutional rights of Jeff Macy. Defendants County of San Bernardino Board of Supervisors were affirmatively linked to & were significantly influential forces of Plaintiff Jeff Macy.

14. Defendants San Bernardino Board of Supervisors has been allowing 4th amendment violations, trespassing taking personal property cables & land. Defendants San Bernardino Board of Supervisors are violating San Bernardino Employee's 1st amendment rights freedom of speech. San Bernardino Board of Supervisors are not allowing employees to talk to Plaintiff & are telling employees not to respond.

## SECOND CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

### (By Plaintiff Against County of San Bernardino Board of Supervisors)

15. Plaintiff hereby re-alleges & incorporates by this reference, as though set forth in full, the allegations in paragraph 1 through 14, inclusive.

16. Plaintiff are informed & believe & thereon alleges that Defendants' actions described in this Complaint were intentional, extreme, & outrageous. Defendants allow unsafe pollution, environmental hazardous, unregulated, heavy Burrtec trucks to trespass, violating 4th amendment

rights & drive-up private road Augusta Way, causing weight damage, which caused Plaintiff a great deal of emotional distress.

17. Plaintiff is further informed & believes & hereon alleges that such actions were done with intent to cause serious emotional distress & were done with reckless disregard of the probability of causing Plaintiff serious emotional distress.

18. As a proximate result of the Defendants actions Plaintiff Jeff Macy incurred damages in the form of psychological & emotional injuries, including, without limitation, pain & suffering, sleep deprivation, making it hard to sleep at night, having nightmares of notices, humiliation, threats of lien on Plaintiff's house every time San Bernardino gives a notice, all of which are continuing & damaging to reputation. Plaintiff's actual damages will be ascertained at trial.

19. The conduct of the Defendants was despicable, malicious, wanton, oppressive & accomplished with a conscious disregard for Plaintiff Jeff Macy's rights, entitling Plaintiff Jeff Macy to an award of exemplary & punitive damages. Defendants only goal against Plaintiff were for monetary gain.

**THIIRD CAUSE OF ACTION**

**Invasion of Privacy**

**(By Plaintiff Against County of San Bernardino Board of Supervisors)**

20. Plaintiff hereby re-alleges & incorporates by this reference, as though set forth in full, the allegations in paragraph 1 through 19, inclusive.

21. **Electronic right to privacy, California Government Code section 11015.5. (b)**

A state agency shall not **distribute or sell any electronically collected personal information about users to any third party without prior written permission from the user,** except as required to investigate possible violations of Section 502 of the Penal Code or as authorized under the Information Practices Act of 1977 (Title 1.8 (commencing with Section 1798) of Part 4 of Division 3 of the Civil Code). Nothing in this subdivision shall be construed to prohibit a state agency from distributing electronically collected personal information to another state agency or to a public law enforcement organization in any case where the security of a network operated by a state agency & exposed directly to the internet has been, or is suspected of having been, breached.

22. **California Government Code section 11015.5. (d)**

For purposes of this section:

(1) **"Electronically collected personal information"** means any information that is maintained by an agency that identifies or describes an individual user, including, but **not limited to, the user's name, social security number, physical description, home address, home telephone number, education, financial matters, medical or employment history, password, electronic mail address**, & information that reveals any network location or identity, but excludes any information manually submitted to a state agency by a user, whether electronically or in written form, & information on or relating

to individuals who are users serving in a business capacity, including, but not limited to, business owners, officers, or principals of that business.

23. The Privacy Act of **1974**, as amended, **5** U.S.C. § **552**a

(b) CONDITIONS OF DISCLOSURE.—**No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the record would be.**

← *County of San Bernardino cannot put the address in a public record in regards to these cases without prior written consent.* ***County of San Bernardino has volunteered to collect people's private information a violation of 4th amendment rights to enrich Burrtec a privately held solid waste company.*** *We believe someone has been bribed. Why would County of San want to spend a lot of effort to give private information to a private public company? County of San Bernardino* ***cannot disclose private information to Burrtec without a written approval or any other third party***.

24. The **Fourth Amendment** to the United States Constitution, made applicable to the states through the due process clause of the Fourteenth Amendment, Mapp v. Ohio, **367** U.S. **643**, *rehearing denied,* **368** U.S. **871** (1961**), guarantees to all persons the <u>right of privacy</u> free from unreasonable state intrusion**. In addition, s. **12**, Art. I, State Const., provides protection from unreasonable searches & seizures:
**"The right of the people to be secure in their persons, houses, papers & effects against unreasonable searches & seizures, & against the**

**unreasonable interception of private communications by any means, shall not be violated. No warrant shall be issued except upon probable cause, supported by affidavit, particularly describing the place or places to be searched, the person or persons, thing or things to be seized, the communication to be intercepted, & the nature of evidence to be obtained.** This right shall be construed in conformity with the 4th Amendment to the United States Constitution, as interpreted by the United States Supreme Court. . . ."

**Administrative searches or inspections such as those under consideration in the instant inquiry, which are conducted outside the judicial process without consent & without prior approval (as evidenced by an administrative search warrant) are not reasonable**, unless a showing can be made that the administrative search or inspection falls within one of the well-established exceptions to this rule. *See, e.g.,* See v. City of Seattle, 387 U.S. 541 (1967); United States v. Sokolow, 450 F.2d 324 (5th Cir. 1971); Benton v. State, 329 So.2d 385 (1 D.C.A. Fla., 1976); Parsons v. State, 334 So.2d 308 (1 D.C.A. Fla., 1976); & AGO 82-7. *Cf.* Colonnade Catering Corp. v. United States, 397 U.S. 72 (1970), & Michigan v. Tyler, 436 U.S. 499 (1978). Both business or commercial premises & **private residences are afforded protection from unreasonable searches by s. 12, Art. I, State Const., & the Fourth Amendment to the U.S. Constitution.** *See* See v. City of Seattle, supra, in which the U.S. Supreme Court held that administrative inspections of commercial structures as well as private residences are forbidden by the Fourth Amendment when conducted without a warrant; & Jones v. City of Longwood, Florida, 404 So.2d 1083 (5 D.C.A. Fla., 1981), in which the court, in a wrongful death action, stated that an ordinance requiring the building inspector & fire chief to periodically inspect all buildings & structures within the city was qualified by the Fourth Amendment & could not authorize inspection of private property without a warrant.

A **municipal code inspector is without authority** to enter onto any **private**, commercial, or **residential** property to assure compliance with or to enforce the various technical codes of the municipality or to conduct any administrative inspections or searches without the consent of the owner or the operator or occupant of such premises or **without a duly issued search or administrative inspection warrant.** The procurement & issuance of administrative inspection warrants is governed by the provisions of ss. 933.20-933.30, F.S. However, owner-occupied family residences are exempt from the provisions of ss. 933.20-933.30, F.S., & as to those **residences a search warrant or the prior consent & <u>approval of the owner is required.</u>**

PAGE 11 OF 16

## FOURTH CAUSE OF ACTION

### Extortion

### (By Plaintiff Against County of San Bernardino Board of Supervisors)

25. Plaintiff hereby re-alleges & incorporates by this reference, as though set forth in full, the allegations in paragraph 1 through 24, inclusive.

26. Defendants San Bernardino Board of Supervisors allowed Legalized Extortion Service of Burrtec. Burrtec is the only private utility company that charges you 3 months in advance. (Edison, Crestline Lake Arrowhead Water Agency, SoCal gas, Charter Communications do not do this.)

## FIFTH CAUSE OF ACTION

### Failure to do Public Record's Requests

### (By Plaintiff Against County of San Bernardino Board of Supervisors)

27. Plaintiff hereby re-alleges & incorporates by this reference, as though set forth in full, the allegations in paragraph 1 through 26, inclusive.

28. Defendants failed to fulfill public records requests from Plaintiff for what regulations Defendants have & who made the regulations; for Defendants to not follow the laws.

29. California Public Records Act Information (CPRA) The Act provides for two types of access. One is a right to inspect public records: "Public records are open to inspection at all times during the office hours of the state or local agency & every person has a right to inspect any public record, except as hereafter provided."

## SIXTH CAUSE OF ACTION

### Negligence

### (By Plaintiff Against County of San Bernardino Board of Supervisors)

30. Plaintiff hereby re-alleges & incorporates by this reference, as though set forth in full, the allegations in paragraph 1 through 29, inclusive.

31. Defendants were negligent, failing to protect religious property, & safety of county's people.

32. Defendants San Bernardino Board of Supervisors were negligent allowing 4th amendment, 6th amendment & 14th amendment violations.

33. Defendants San Bernardino Board of Supervisors were negligent refusing to investigate police misconduct & other misconduct. Even after losing court hearing & franchise Federal Lawsuit to pay damages.

34. Defendants San Bernardino Board of Supervisors has caused Plaintiff to do lawsuits such as 5:24-cv-00668-AB-SHKx against Cedar Pines Mutual Water Park Company that Plaintiff won, due to failure to investigate misconduct. Defendants are covering up County's crimes instead of fixing misconduct.

**WHEREFORE,** Plaintiff's pray judgment against Defendants as follows:

1. For compensatory damages of $250,000;

2. For treble damages pursuant to the Bane Act;

3. For punitive damages on those claims where it is available, pursuant to law in an amount sufficient to punish, deter, & make an example of the Defendants;

4. For interest on those claims where it is available under law;

5. For cost of suit; &

6. For such other & further relief as this Court may deem to be just & proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a trial by jury.

PAGE 13 OF 16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## REPORT/RECOMMENDATION TO THE BOARD OF SUPERVISORS
## OF SAN BERNARDINO COUNTY, CALIFORNIA
## AND RECORD OF ACTION

### October 6, 2015

FROM:      TERRY W. THOMPSON, Director
           Real Estate Services Department

SUBJECT:   ADOPTION OF AN ORDINANCE OF THE COUNTY OF SAN BERNARDINO
           GRANTING A REVENUE FRANCHISE TO CEDARPINES PARK MUTUAL
           WATER COMPANY

### RECOMMENDATION(S)

Adopt **Ordinance No. 4289** relating to granting a revenue franchise to Cedarpines Park Mutual Water Company in the unincorporated area of Cedarpines Park for the period commencing on the effective date of the ordinance granting the franchise and terminating fifteen years thereafter, which was introduced on September 15, 2015, Item No. 92.
(Presenter: Terry W. Thompson, Director, 387-5252)

### BACKGROUND INFORMATION

This item will adopt an ordinance, introduced during a public hearing on September 15, 2015, Item No. 92, granting a fifteen-year water franchise to Cedarpines Park Mutual Water Company, which will become effective and commence thirty days from adoption.

(KK: 677-8751)

Page 1 of 1

---

cc:  w/ordinance
     RES-Thompson
     County Counsel-Hardy
     File - Franchise/Water/Cedarpines
        Park Mutual Water Co. w/attach
jr   10/7/15

     ITEM 88

Record of Action of the Board of Supervisors

APPROVED (CONSENT CALENDAR)
COUNTY OF SAN BERNARDINO
Board of Supervisors

| MOTION | SECOND | ABSENT | AYE | MOVE | AYE |
|--------|--------|--------|-----|------|-----|
|        | 1      | 2      | 3   | 4    | 5   |

LAURA H. WELCH, CLERK OF THE BOARD

BY _____

DATED: October 06, 2015

Rev 7-29-14

ORDINANCE NO. 4289

AN ORDINANCE OF THE COUNTY OF SAN BERNARDINO, STATE OF CALIFORNIA, GRANTING TO CEDARPINES PARK MUTUAL WATER COMPANY, ITS SUCCESSORS AND ASSIGNS, A FRANCHISE TO CONSTRUCT, USE, AND REPAIR WATER PIPELINES FOR CEDARPINES PARK MUTUAL WATER COMPANY ALONG, ACROSS, UPON AND UNDER THE PUBLIC STREETS WITHIN THE COUNTY OF SAN BERNARDINO; AND REPEALING AGREEMENT NO. 00-1081.

The Board of Supervisors of the County of San Bernardino, State of California, ordains as follows:

SECTION 1.  The Board of Supervisors of the County of San Bernardino finds as follows:

(a)     Cedarpines Park Mutual Water Company transports water by means of pipe or pipelines; and

(b)     Cedarpines Park Mutual Water Company has applied for a franchise from the County of San Bernardino to construct and use certain rights-of-way and property for its transportation of water.

SECTION 2.   Cedarpines Park Mutual Water Company is hereby granted a franchise for a term not to exceed fifteen (15) years from the date of acceptance of said franchise and subject to the "Terms and Conditions of Franchise Issued to Cedarpines Park Mutual Water Company" and acceptance thereof by Cedarpines Park Mutual Water Company, as attached hereto and incorporated herein by this reference.

SECTION 3.   County of San Bernardino Agreement No. 00-1081 is hereby repealed in its entirety.

2DR6874
RFM.mhf

1

# FRANCHISE AGREEMENT BETWEEN SAN BERNARDINO COUNTY AND CEDARPINES PARK MUTUAL WATER COMPANY FOR WATER FRANCHISE

## CHAPTER 1 - GENERAL REGULATIONS

Parts:

1. General Provisions and Definitions
2. Compensation
3. Construction
4. Water Pipelines – Special Provisions

## PART 1 - GENERAL PROVISIONS AND DEFINITIONS

Sections:

1  Definitions
2  Continuation of Provisions
3  General Conditions for Franchises
4  Term of Franchise
5  Acceptance of Franchise
6  Grant Nonexclusive – Compliance With Regulations
7.  Insurance Requirements and Indemnification
8.  Faithful Performance Bond
9.  Alternative to Bonds– Assignment of Savings and Loan Certificates or Shares
10.  Grant and Forfeiture Conditions
11.  Costs of Technical Assistance
12.  Sale, Transfer, Stock Transfer, Lease, Assignment, Hypothecation or Change in Control of Franchise – Conditions
13.  Overlapping Franchise Areas Held by One Franchisee
14.  Franchise Fee Report Requirements
15.  Grounds for Suspension or Forfeiture – Hearing
16.  Permit for Performance of Work
17.  Severability

**1 Definitions:** For the purposes of this Agreement, the following terms, phrases, words and their derivations shall have the meanings given herein. When not inconsistent with the context, words used in the present tense include the future tense, words in the plural number include the singular number, and words in the singular number include the plural number.

A.  "Agreement" means the document containing the terms and conditions under which a public or nonpublic utility holds a franchise and operates within the County.

B.  "Board" means the Board of Supervisors of the County of San Bernardino.

1

C.  "County" means the County of San Bernardino, State of California.

D.  "Department" means the Real Estate Services Department, Franchise Authority, County of San Bernardino.

E.  "Director" means Director of the Real Estate Services Department, County of San Bernardino or his designee.

F.  "Facilities" or "appurtenances" means all property of the franchisee, including, but not limited to, pipelines, pump stations, and service connections with the franchisee's facilities, whether installed by the franchisee or not, which are erected, constructed, laid, operated or maintained in, upon, over, under, along or across any highway pursuant to any right or privilege granted by the franchise.

G.  "Franchisee" or "grantee" means the person to whom a franchise is granted.

H.  "Franchise payment period" is the period from January 1st through December 31st of the year granting the franchise, or fractional calendar year, and each calendar year thereafter, during the term of the franchise.

I.  "Franchise report period" means the period from January 1st through December 31st of the year granting the franchise, and each year thereafter, during the term of the franchise.

J.  "Gross Annual Receipts" means all revenue, as determined in accordance with generally accepted accounting principles, which is received, directly or indirectly, by Company from or in connection with the sale, operation or distribution of water.  Revenue shall not include: income received from the sale of merchandise; investment or interest income; bad debt write-offs or bad check collection fees or re-deposited checks.

K.  "Highway" means any public highway, freeway (except a state freeway), street, road, alley, lane or court or other public easement, and any public places, and above and below the same, which now exists or which may hereafter exist, in any unincorporated territory of the County for which the County has the authority to grant a franchise.

L.  "Main" means any pipeline or conduit laid in, along or approximately parallel with any highway for the collection, transmission or distribution of any substance or commodity.

M.  "Person" means any individual, person, firm, partnership or corporation.

N.  "Road Department" means the Transportation Department and/or the Special Districts Department of the County of San Bernardino.

O. "Service connection" means the wire, pipes or conduits connecting the building or place where the service or commodity supplied by the franchisee is used or delivered, or is made available for use or delivery, with the supply line or supply main in the highway, or with such supply line or supply main on private property.

**2 Continuation of Provisions:** The provisions of this Agreement, insofar as they are substantially the same as existing provisions relating to the same subject matter, shall be construed as restatements and continuations thereof, and not as new enactments.

**3 General Conditions for Franchises:** Every franchise hereafter granted by the County to lay or construct, from time to time, and for the period covered by the franchise, to maintain, operate, renew, repair, change the size of, remove or abandon in place, pipes and pipelines for water, wastewater, other liquid substances, for any purpose, together with all manholes, valves, appurtenances and service connections necessary or convenient for the operation of said pipes or pipelines in, under, along, or across any and all highways, shall be subject to the rules, regulations, restrictions and terms and conditions of this Agreement.

**4 Term of Franchise:** The term of the franchise shall be fifteen (15) years.

**5 Acceptance of Franchise:** The franchisee shall, within thirty (30) days after the adoption of the Resolution granting the franchise, file with the Clerk of the Board a written acceptance of the terms and conditions of said Agreement, use will constitute acceptance.

**6 Grant Nonexclusive – Compliance with Regulations:** The granting of the franchise shall not be construed to prevent the County from granting any identical or similar franchise to any person other than the franchisee. Nothing herein contained shall be construed to exempt the franchisee from compliance with all ordinances, resolutions, rules or regulations of the County now in effect, or which may be hereafter adopted, which are not inconsistent with the terms of the franchise.

**7 Insurance Requirements and Indemnification:** On or before commencement of any franchise operations, franchisee shall obtain, or provide satisfactory evidence of having, policies of liability, auto, and Workers' Compensation insurance from companies authorized to transact business in the State of California by the Insurance Commissioner of California.

A. 1. The franchisee shall, at its sole expense, indemnify, defend, and hold harmless the County, its agents, officers and employees from and against any and all liability, expense, including defense costs and legal fees, and claims for damages of any nature whatsoever, including, but not limited to, bodily injury, death, or property damage, including property of the franchisee, arising from or connected with, either directly or indirectly, franchisee's activities, operations or

3

services hereunder, including any Workers' Compensation suits, liability, or expense arising from or connected with services performed on behalf of franchisee by any person pursuant to this franchise.

2.  Nothing herein shall be deemed to prevent the parties indemnified and held harmless herein from participating in the defense of any litigation by their own counsel at the franchisee's sole expense. Such participation shall not under any circumstances relieve the franchisee from its duty of defense against liability or of paying any judgment entered against such party.

B.   Without limiting franchisee's indemnification of County pursuant to Part 1, Section 7 A, franchisee shall provide and maintain at its own expense during the term of the franchise, the following programs of insurance covering its operations hereunder.  Such insurance shall be provided by insurers satisfactory to the Director and satisfactory evidence of such programs shall be delivered to the Department, on or before the effective date of the franchise.  Insurance policies and certificates evidencing coverage shall name the County of San Bernardino, its officers, agents, and employees as additional insured with respect to franchisee's operations under the franchise.  Such evidence shall specifically identify the franchise and shall contain express conditions that the County is to be given written notice by registered mail at least thirty (30) days in advance of any modification or termination of any program of insurance.

1.  **Liability:** Such insurance shall be primary to and non-contributory with any other insurance maintained by County and shall name the County of San Bernardino, its officers, agents, and employees as additional insured, and shall include:

a. Comprehensive General Liability Insurance endorsed for Premises-Operations, Products/Completed Operations, Contractual, Broad Form Property Damage, and Personal Injury with a combined single limit of not less than $1,000,000 per occurrence.  If the above insurance is written on a Claims Made Form, such insurance shall be endorsed to provide an extended reporting period of not less than five (5) years following termination of the policy.

2.  **Auto:**  Comprehensive Auto Liability Insurance endorsed for all owned, non-owned and hired vehicles with a combined single limit of at least $1,000,000 per occurrence.

3.  **Workers' Compensation:** A program of Workers' Compensation Insurance in an amount and form to meet all applicable requirements of the Labor Code of the State of California, including Employers Liability Insurance with a $250,000 limit, covering all persons providing services on behalf of franchisee and all risks to such persons under the franchise.  Franchisee may provide, if applicable, a certificate of consent to self-insure, issued by the Director of Industrial Relations

of the State of California. Should franchisee utilize the self-insurance provision of this Section, and franchisee's Certification of Consent to Self-insure expires or is revoked, franchisee shall be required to provide a program of Workers' Compensation Insurance upon said expiration or revocation.

a. Franchisee shall furnish the Director, prior to commencement of any franchise operations, either certified copies of said policies required by Subsection B of this Section, or a certificate of insurance for each of the required policies executed by the company issuing the policy, certifying that the policy is in force.

b. No franchise operations shall commence until franchisee has complied with the aforementioned provisions of this Section, and any such operations shall be suspended during any period that franchisee fails to maintain said policies in full force and effect.

c. It shall be the franchisee's obligation to provide evidence of current insurance policies.

**8 Faithful Performance Bond:** Within five (5) days after the effective date of the Agreement granting the franchise, franchisee shall file, and thereafter at all times during the life of the franchise keep on file with the Director, a corporate surety bond running to the County, and also to any incorporated city or public entity which may become entitled to the benefits herein reserved in the franchise by virtue of future incorporations or annexations, in the penal sum of $3,000.00, or such other sum as may be specifically provided for in the Agreement granting the franchise, with surety to be approved by the Director, conditioned that franchisee shall well and truly observe, fulfill and perform each condition of the franchise and that in case of any breach of condition of the bond, as an alternative to revocation of the franchise, the whole amount of the penal sum shall be deemed to be liquidated damages and shall be recoverable from the principal and sureties of the bond. If said bond is not filed within five (5) days after the effective date of the Agreement granting the franchise, the award of the franchise may be set aside and the Agreement granting the franchise may be repealed at any time prior to the filing of said bond, and any money paid in consideration for award of the franchise shall be deemed forfeited. In the event that the bond, after it has been filed, shall at any time during the life of the franchise, in the opinion of the Director, become insufficient, franchisee agrees to renew said bond, with sureties to be approved by the Director, within ten (10) days after written notice to do so from the Director.

**9 Alternative to Bonds– Assignment of Savings and Loan Certificates or Shares:**

Letter of Credit or Security Fund: In addition to the performance bond required in Part 1, Section 9, the County may require a clean, irrevocable letter of credit or establishment of a security fund, to be maintained in an amount to be specified in this Agreement granting the franchise, as security for compliance with time and performance requirements of the franchise. In the event the County withdraws any funds from any such instrument(s), franchisee shall replenish the amount withdrawn

within ten (10) business days. The rights reserved with respect to a letter of credit or a security fund are in addition to all other rights of the County.

## 10 <u>Grant and Forfeiture Conditions</u>:

1.   The franchise is granted and shall be held and enjoyed upon each and every condition contained in the Agreement granting the franchise and shall be construed against the franchisee.

2.   In this Agreement and otherwise, the County reserves the right to suspend or revoke and terminate a franchise and all rights and privileges of a franchisee in the event of a material breach of its terms and conditions.   In interpreting this Section, material provisions shall include all labeled as such and all others, which, under all the facts and circumstances indicated, are a significant provision of the Agreement. A material breach by franchisee shall include, but shall not be limited to, the following:

   a.   Violation of any material provision of the franchise or any material rule, order, regulation or determination of the County made pursuant to the franchise;

   b.   Practice of any fraud or deceit upon the County;

   c.   Failure to complete system construction, reconstruction, or system extensions, as provided under the franchise;

   d.   Failure to provide the types of facilities, equipment or services promised;

   e.   Material misrepresentation of fact in the application for or negotiation of the franchise. The foregoing shall not constitute a material breach if in the opinion of the Director, the violation occurs without fault of the franchisee or occurs as a result of circumstances beyond its control. Franchisee shall not be excused by mere economic hardship nor by misfeasance or malfeasance of its shareholders, directors, officers or employees.

3.  The Director, prior to any suspension or revocation and termination of the franchise, shall give to the franchisee not less than fifteen (15) days notice in writing of any default thereunder.  If the franchisee does not, within the noticed period, begin the work of compliance, or, after such a beginning, does not prosecute the work with due diligence to completion, the Board shall hold a hearing, at which the franchisee shall have the right to appear and be heard. Notice of said hearing shall be given to franchisee by certified mail not less than fifteen (15) days before said hearing.

4.  Upon the conclusion of the hearing, the Board may determine whether such conditions are material and essential to the franchise and whether the franchisee

6

is in default with respect thereto and may declare the franchise suspended or
revoked and terminated. No revocation and termination shall become effective
less than thirty (30) days after the Board's declaration to revoke and terminate;
and no lapse of time, expenditure or any other thing shall be deemed to give the
franchisee any vested right or interest in the continuation of the franchise
granted.

**11 Costs of Technical Assistance:** Franchisee shall pay the reasonable costs
incurred by the County for any technical assistance deemed necessary by the County
for obtaining independent verification of technical compliance with all franchise imposed
standards. County shall not incur any such costs without fifteen (15) day written notice
to franchisee and without prior consultation with the franchisee.

**12 Sale, Transfer, Stock Transfer, Lease, Assignment, Hypothecation or Change
in - Control of Franchise - Conditions:**

A. The franchisee shall not sell, transfer, assign, lease, hypothecate, place in trust,
or change the control of the franchise or any part thereof, except with the prior
written approval of the Director, and after payment of the fees required by Part 2,
Section 21. The Director's consent shall not be unreasonably withheld. As used in
this Section, "transfer" includes stock transfer and "control" includes actual working
control in whatever manner exercised.

B. Franchisee shall inform the Director of any pending sale, transfer, lease,
assignment, hypothecation, placing in trust, or change in control, except as excluded
in Subsection D. Transferor and transferee must file an application for Director's
consent to transfer control of or assign the franchise as set forth in Subsections F
and G. Such applications shall be accompanied by the fees required in Part 2,
Section 21 and shall be signed by duly authorized representative(s) with the
signature(s) acknowledged by a notary.

C. Franchisee shall file with Director a certified copy of the duly executed instrument
of such sale, transfer, assignment, lease, hypothecation, trust or change in control
within thirty (30) days of the effective date of such transaction. If such instrument is
not filed with the Director within thirty (30) days after the effective date of such
transaction, the franchise shall be subject to forfeiture, and the Board may proceed
to repeal the franchise.

    1. As a condition to the granting of consent to such sale, transfer, assignment,
lease, hypothecation, trust, or change in control, the Board may impose such
additional terms and conditions upon the franchise and upon the grantee or
assignee which the Director recommends or the Board deems to be in the public
interest. Nothing herein contained shall be construed to grant to the franchisee
the right to sell, transfer, assign, lease, hypothecate, place in trust, or change
control of the franchise or any part thereof, except in the manner aforesaid. This

Section applies to any assignment, whether by operation of law, by voluntary act of the franchisee, or otherwise.

D. Shareholders and/or partners of the franchisee may transfer, sell, exchange, assign or divest themselves of any interest they may have.  However, in the event any such sale, transfer, exchange, assignment, divestment or other change gives control of twenty-five percent (25%) or more interest in franchisee's operations to any person, corporation, partnership or legal entity other than the holder of the controlling interest on the effective date of the franchise, or the effective date of the last assignment, sale, transfer, or other action requiring the County's consent, then prior approval of the current transaction shall be obtained from the County.

E. Consent to any such transfer shall only be refused if the Director finds that the franchisee is in noncompliance with terms and conditions of the franchise and/or if the transferee is lacking in financial ability to continue the operations authorized by the franchise.

F. Transferor's (assignor's) application shall include:

 1.  Identification and ownership of transferee. In its application for approval, transferor shall identify the transferee and its ownership as if transferee were an applicant for an initial grant.

 2.  Financial Statements. Current financial statements showing the financial condition of the franchisee as of the date of the application. Transferor shall also agree to submit financial statements showing the condition of franchisee as of the closing.  Said financial statements must have been audited and certified by an independent certified public accountant, and shall be submitted within ninety (90) days of the closing.

 3.  The submittal of a final accounting and report of franchise fees set forth in Part 1, Section 16, within thirty (30) days of the effective date of approval of transfer/assignment of the franchise, or as of the date of close of the transfer/assignment. The transferee shall be responsible for any underpayment and shall be entitled to a credit for any overpayment.

G. Transferee's (assignee's) application shall include:

 1.  Current financial statements of the proposed transferee and other information and data, including but not limited to, sources of capital, as will demonstrate conclusively that transferee has all the financial resources necessary to acquire the pipeline system, carry out all of the terms and conditions of the franchise, remedy any and all defaults and violations of the provisions of this Chapter and Agreement granting the franchise in the transferor's past and present operations and make such other improvements and additions as may be required or

proposed in the services and facilities, including but not limited to, upgrading, rebuilds, and extensions of facilities and equipment.

2.  A statement of any changes in rates and charges which transferee proposes to make during the first three (3) years following approval of the transfer or assignment.

3.  An express and unconditional written acceptance of the terms and conditions of the existing franchise, and the franchise as modified, as a condition to the transfer, accompanied by such guarantees as meet the requirements of Part 1, Section 5.

4.  A summary of the plans and commitments of the transferee to remedy the specific defaults and violations, if any, in the operations of transferor under the existing franchise.

**13  Overlapping Franchise Areas Held By One Franchisee:** In the event a franchisee acquires an additional franchise which results in the overlapping, in whole or in part, of any franchise service area(s), the Director shall determine which of the two (2) franchises shall prevail as to the overlapping area(s), and the franchise service area granted in the non-prevailing franchise shall be amended to delete the overlapping area(s).

**14  Franchise Fee Report Requirements:** The franchisee, during the term of the franchise, within ninety (90) days after the expiration of each calendar year, shall file with the Department, the following reports:

A. Four (4) copies of a report, verified by the oath of a duly authorized representative of the franchisee, setting forth in detail the computation of the amount of the franchise payment due for the immediately preceding calendar year.

Franchisee shall also provide, a detailed profit and loss statement showing all gross receipts and expenses derived from the franchisee's franchise operations during the reporting period; and, upon request, such additional data as is reasonably necessary in the opinion of the Director and the County Auditor-Controller to calculate or verify the calculation of the annual payment.

B. A street and highway map or maps of any convenient scale on which shall be plotted the location of the entire distribution system or systems covered by the report as of the last day of the franchise payment period, with that part of said system or systems located in County highways indicated by distinctive coloration or symbols.

If there are no pipeline additions or pipeline abandonment within the system for the reporting year, reference to the preceding year's map submission shall be sufficient.

C. A report, in duplicate, showing the lineal length and internal diameter of pipelines installed or abandoned, segregating such footage as to new mains laid, old mains removed, old mains abandoned in place, pursuant to each excavation permit during the immediately preceding franchise report period. The following types of reports shall be sufficient to satisfy the report requirement:

    1. Copies of the excavation permits acquired from the appropriate County Department obtained for doing any work under the franchise, indicating the required information stated in Subsection C, for which a permit is required during the immediately preceding franchise report period.

    2. An internal report showing the amount of pipeline footage installed and/or abandoned pipeline during the immediately preceding franchise report period.

**15 Grounds for Suspension or Forfeiture – Hearing:** The franchise is granted and shall be held and enjoyed upon each and every condition contained in the Agreement granting the franchise, and shall be strictly construed against the franchisee. Any neglect, failure, or refusal by the franchisee to comply with any of the conditions of the franchise shall constitute grounds for the suspension or forfeiture thereof. The Board, prior to any suspension or forfeiture of the franchise, shall give the franchisee not less than fifteen (15) days notice in writing.

A. If the franchisee does not, within the noticed period, begin the work of compliance, or after such beginning does not prosecute the work with due diligence to completion, the Board may hold a hearing, at which the franchisee shall have the right to appear and be heard, and thereupon the Board may determine whether such conditions are material and essential to the franchise and whether the franchisee is in default with respect thereto and may declare the franchise suspended or forfeited. Notice of said hearing shall be given to the franchisee by certified mail not less than fifteen (15) days before said hearing.

**16 Permit for Performance of Work:** Notwithstanding the granting of a franchise, the franchisee shall not be authorized to do any work under the franchise for which the issuance of a permit is required unless a permit is issued for such work.

**17 Severability:** If a court of competent jurisdiction holds any provision of the franchise invalid, the remainder of the franchise shall not be affected thereby.

## PART 2 - COMPENSATION

**Sections:**

| | |
|---|---|
| 18 | Rates |
| 19 | Franchise Fees |
| 20 | Proration of Payments |

21    Prompt Payment – Delinquency Charge
22    Record Keeping Requirements
23    Audit

**18 Rates:** As consideration for the franchise granted, the franchisee shall pay to the County, the following:

**General:** In the case of an initial grant of franchise, the franchisee shall pay to the County an initiation fee based upon the actual costs incurred in the execution of the franchise, and the sum of money sufficient to reimburse the County for all publication expenses incurred with the granting of the franchise, within thirty (30) days after the Board adopts the Agreement granting the franchise.

**19 Franchise Fees:** The franchisee of any franchise awarded to a water company, as further consideration for the franchise granted, shall pay to the County, two percent (2%) of the gross annual receipts of the franchisee arising from the use, operation, or possession of the franchise. These receipts shall include all revenue, as determined in accordance with generally accepted accounting principles, which is received, directly or indirectly, by Company from or in connection with the sale, operation or distribution of water.  Revenue shall not include: income received from the sale of merchandise; investment or interest income; bad debt write-offs or bad check collection fees or re-deposited checks.

A.   Such percentage shall be payable annually during the life of the franchise, according to the "franchise payment period" as defined in Subsection H of Part 1, Section 1, and shall be due within fifteen (15) days after the time for filing of the report as defined in Part 1, Section 14;

B.   Provided, however, that if the franchise is a renewal, continuation or extension of a right already in existence, the payment of said percentage of gross receipts shall accrue from the effective date of the Agreement granting the franchise and shall be due within thirty (30) days after the time for filing of the statement.

C.  As used above, the phrase "two percent (2%) of the gross annual receipts of the Franchisee" shall be construed as that similar phrase is found in Sections 6006 and 6231 of the Public Utilities Code of the State of California.

1.  The County reserves the right to change its fees at five (5) year intervals from the effective date of the Agreement granting the franchise, after a public hearing determines that good cause exists and such action is not in conflict with the laws of the State of California.

2.  Amendment of Franchise Act of 1937.  If the Franchise Act of 1937 (Public Utilities Code Sections 6201-6302) is amended to increase the franchise payment formula, then the franchise payment formula shall be adjusted in conformity with the amended formula effective with the franchise fee due for the calendar year beginning closest to the effective date of such amendment.

3.   Amendment or enactment of other applicable laws.  If any applicable law, other than the Franchise Act of 1937, is amended to increase the franchise payment formula, then the franchise payment formula set forth herein shall be adjusted in conformity with the new formula beginning with the franchise fee due for the calendar year beginning closest to the effective date of such amendment; provided, however, that if such higher franchise payment formula is conditioned upon or enacted in consideration of other obligations, limitations, or requirements imposed upon the grantor of the franchise, then those obligations, limitations and requirements shall also become part of the franchise granted herein.

**20 Proration of Payments:** In the event of abandonment of facilities with the approval of the County as provided herein, or in the event of removal of such facilities by the franchisee, the payments otherwise due the County for occupancy of the roads or highways by such facilities shall be prorated for the calendar year in which such removal or abandonment occurs as of the end of the calendar month in which removal or abandonment took place.

**21 Prompt Payment – Delinquency Charge:** In the event franchisee fails to make the payments for the franchise on or before the dates due, as an alternative to revocation of the franchise, franchisee shall pay as additional consideration the following amount: a sum of money equal to ten percent (10%) of the amount due.   Said sum shall be due within thirty (30) days after written demand from the County, and failure to pay such charge shall be grounds for forfeiture of the franchise.

**22 Record Keeping Requirements:** Franchisee shall keep and preserve for a period of five (5) years subsequent to the date of the most recent franchise fee determination ascertained by an audit made by the County or on its behalf, all records necessary to determine the amount of such franchise fees or other payments due under Part 2, Section 21 above. Franchisee, upon demand by County, shall make such records available for inspection by County or its authorized representative.

A. At all reasonable times, the franchisee shall permit County, or its duly authorized representative, to examine all property that the franchisee has erected, constructed, laid, operated, or maintained pursuant to the franchise, together with any appurtenant property of the franchisee, and to examine and transcribe any and all books, accounts, papers, maps, and other records kept or maintained by the franchisee or under its control which relate to the operations, affairs, transactions, property or financial condition of the franchisee with respect to the franchise.

**23 Audit:** The County Auditor/Controller-Recorder, or any qualified person designated by the County, upon reasonable advance notice to franchisee, at any reasonable time during regular business hours, may make examination at the franchisee's office or offices of its books and records for the purpose of verifying the franchise fees set forth in the statement required herein, subject to the following terms and conditions:

1. All books and records subject to examination by the County Auditor/Controller-Recorder, or other qualified person designated by the County, shall be made available within the franchisee's office where they are kept.

2. Records need not be made available until County executes and delivers to franchisee written confirmation that the County's request to examine the books and records is made pursuant to its audit rights herein and written confirmation that County will use the information obtained only for purposes of the audit, will not disclose any information it obtains to third parties without the prior written consent of franchisee, and that it will maintain the confidentiality of any information reasonably designated by the franchisee as confidential. Nothing herein shall be construed to require franchisee to make available information which constitutes private or confidential information pertaining to specific customers of franchisee, without the prior written consent of the customer(s) involved.

3. County shall provide franchisee with the results of its audit. In the event County's audit reveals an error in the franchise fee amount set forth in the statement being audited, and said error is in excess of two per cent (2%) of the amount of payment set forth in the statement in question, the following provisions shall be applicable:

   a. if the audit reveals that an additional franchise fee amount is due, and if franchisee agrees with such determination, the additional franchise fee shall be paid within fifteen (15) business days after County's written demand therefor and the franchisee shall assume all reasonable costs for said audit.

   b. if the audit reveals that there was an overpayment of the franchise fee, then County shall refund the amount of the overpayment within fifteen (15) business days after franchisee's written demand therefor.

4. In the event of a disagreement between the parties, each party shall have all of the rights and remedies provided by the franchise and by law.

## PART 3 - CONSTRUCTION

### Sections:

24    General Regulations
25    New or Replacement Installations
26    Highway Work – Conditions and Requirements
27    Annual Completion Statement
28    Emergency Equipment and Personnel
29    Relocation of Pipelines and Appurtenances
30    Removal or Abandonment of Facilities – Procedures
31    Removal or Abandonment of Facilities – Failure to Comply – Remedies

24 **General Regulations**: Pipelines and appurtenances shall be constructed and maintained in a good workmanlike manner, in conformity with the terms and conditions of Chapter 7 of Division 4 of Title 1 of the County Code, or any other ordinance, resolution, agreement, rule or regulation, now or hereafter amended, adopted or prescribed by the County as may be applicable to the construction and maintenance of pipelines and appurtenances.  All pipes laid under the franchise shall be of first class material.

25 **New or Replacement Installations**: New installations or replacements of pipelines and appurtenances and all other facilities necessary for the installation, operation, maintenance, and safety of pipelines and conduits shall be laid and maintained only pursuant to permits issued by the Road Department. All such installations or replacements shall be reviewed by the Director as to the most desirable location in the roads or highways of the County, and his decision shall be final and binding on the franchisee.

26 **Highway Work – Conditions and Requirements**: The work of constructing, laying, replacing, maintaining, repairing, abandoning or removing all pipelines and appurtenances authorized under the provisions of this Agreement in, over, under, along, or across any highway shall be done to the satisfaction of the Director, at the expense of the franchisee, and in accordance with the terms and conditions of this Agreement.

27 **Annual Completion Statement**: The franchisee shall submit an Annual Summary to the Department, identifying the permit or permits issued by the Road Department during the preceding calendar year, identifying the total length of pipeline, the construction of which was authorized under such permit or permits, the nominal internal diameter of the pipeline(s), and the total length of pipeline(s) or appurtenances actually laid.

28 **Emergency Equipment and Personnel**: At all times during the term of this franchise, the franchisee shall maintain or arrange for, on a twenty-four (24) hour-a-day basis, adequate emergency equipment and a properly trained emergency crew within a reasonable distance from any facilities installed or maintained pursuant hereto for the purpose of shutting off the pressure and the flow of the contents of such facilities in the event of an emergency resulting from an earthquake, act of war, civil disturbance, fire, flood, or any other cause whatsoever.  The franchisee shall provide to the County a telephone number that is not available to the public whereby the County will be able to obtain status reports from the franchisee on a twenty-four (24) hour basis concerning interruptions of the supply of gas or electricity to any portion of the County.

29 **Relocation of Pipelines and Appurtenances**: The County reserves the right to change the grade, the width or to alter or change the location of any highway over which the franchise is granted.  If any of the pipelines, facilities or appurtenances constructed, installed, or maintained by the franchisee pursuant to the franchise on, along, under, over, in, upon, or across any highway are located in a manner which prevents or interferes with the change of grade, traffic needs, operation, maintenance,

improvement, repair, construction, reconstruction, widening, alteration or relocation of the highway, or any work or improvement upon the highway, the franchisee shall relocate permanently or temporarily any such facility at no expense to the County, upon receipt of a written request from the Director to do so, and shall commence such work on or before the date specified in such written request, which date shall be not less than thirty (30) days from receipt of such written request. Franchisee shall thereafter diligently prosecute such work to completion; provided, however, if such highway is subsequently established as a state highway, thereafter and so long as such highway remains a state highway, no such change of location shall be required for a temporary purpose.

A. The County reserves the right for itself, and for all cities and public facilities which are now or may later be established, to lay, construct, repair, alter, relocate, and maintain subsurface or other facilities or improvements of any type or description in a governmental, but not proprietary, capacity within the highways over which the franchise is granted. If the County (or city or other public entity) finds that the location or relocation of such facilities or improvements conflicts with the facilities laid, constructed or maintained under the franchise, whether such facilities were laid before or after the facilities of the County (or such city or public entity), the franchisee shall, at no expense to the County, city or public entity, on or before the date specified in a written request from the Director, which date shall be not less than thirty (30) days after the receipt of such notice and request, commence work to change the location either permanently or temporarily of all facilities conflicting with such improvements to a permanent or temporary location in said highways, with such work to be approved by the Director; thereafter franchisee shall diligently prosecute such work to completion. If such highway is subsequently established as a state highway, and while it remains a state highway, the rights of the State of California shall be as provided in Section 680 of the Streets and Highways Code.

**30 Removal or Abandonment of Facilities – Procedures:** At the expiration, revocation or termination of this franchise or the permanent discontinuance of the use of all or a portion of its facilities, the franchisee shall, within thirty (30) days thereafter, make written application to the Director for authority either (1) to abandon all or a portion of such facilities in place; or (2) to remove all or a portion of such facilities.

Such application shall describe the facilities desired to be abandoned, their location with reference to County roads, and shall describe with reasonable accuracy, the physical condition of such facilities. The Director shall determine whether any abandonment or removal, which is thereby proposed, may be effected without detriment to the public interest and under what conditions such proposed abandonment or removal may be effected. The Director shall then notify the franchisee of his determinations.

A. Within thirty (30) days after receipt of such notice, the franchisee shall apply for a permit from the Road Department to abandon or remove the facilities.

B. The franchisee shall, within sixty (60) days after obtaining such permit,

15

commence and diligently prosecute to completion the work authorized by the permit.

31 <u>Removal or Abandonment of Facilities – Failure to Comply – Remedies</u>:

A.  If any facilities to be abandoned "in place", subject to prescribed conditions, shall not be abandoned in accordance with all such conditions, the Director may make additional appropriate orders, including an order that the franchisee shall remove any or all such facilities. The franchisee shall comply with such additional orders.

B. In the event that the franchisee fails to comply with the terms and conditions of abandonment or removal as may be required by this Agreement, and within such time as may be prescribed by the Director, then the County may remove or cause to be removed such facilities at the franchisee's expense. The franchisee shall pay to the County the cost of such work, plus the current rate of overhead being charged by the County for reimbursable work.

C. If at the expiration, revocation or termination of this franchise, or the permanent discontinuance of the use of all or a portion of its facilities, the franchisee, within thirty (30) days thereafter, fails or refuses to make written application for the above-mentioned authority, the Director shall make the determination as to whether the facilities shall be abandoned in place or removed. The Director shall then notify the franchisee of his determinations. The franchisee shall thereafter comply with the provisions of Part 3, Section 30.

## PART 4 – WATER PIPELINES – SPECIAL PROVISIONS

<u>Sections</u>:

| | |
|---|---|
| 32 | Rights Granted |
| 33 | Plan Approval – By County Fire Department |
| 34 | Plan Approval – Conditions |
| 35 | Plan Approval – Exceptions Authorized |
| 36 | Fire Hydrants – Maintenance Agreement |

**32 <u>Rights Granted</u>:** The franchisee holding a franchise for water pipelines shall have the right, during the term of the franchise, to make service connections with all property adjoining highways and to furnish and distribute water through said pipes and pipelines to all the unincorporated territory adjacent to said pipelines for any purpose.

**33 <u>Plan Approval – By County Fire Department</u>:** All new pipelines, replacements, and extensions for domestic water service shall be constructed, laid, and designed according to plans approved by the County Fire Chief.

**34 <u>Plan Approval – Conditions</u>:** The County Fire Chief shall approve such plans if the pipelines to be laid, extended, or replaced are so designed in conjunction with related facilities and the location of fire hydrants that they comply with required domestic demands and fire flows indicated by the Chief.

35 <u>Plan Approval – Exceptions Authorized</u>: The County Fire Chief may grant an exception to the requirements of Section 34 above where there are practical difficulties or unnecessary hardships in carrying out the requirements of said Section.

36 <u>Fire Hydrants – Maintenance Agreement</u>: As further consideration for the granting of the franchise, the franchisee agrees that the maintenance, relocation, repair and replacement of each and every fire hydrant within its area of service shall be provided for in an agreement between the franchisee and the County.

Cedarpines Park Mutual Water Company by execution hereof by its duly authorized officer, accepts the franchise granted hereunder in accordance with the Terms and Conditions of Franchise to Cedarpines Park Mutual Water Company as set forth herein;

Name: _____

Title: _PRESIDENT_____

Date: _8/12/2015_____

1     SECTION 4.  The Clerk of the Board is directed to publish this ordinance in the

2     manner and within the time prescribed by law.

3

4     SECTION 5.  This ordinance shall take effect thirty (30) days from the date of

5     adoption.

6

7                                        JAMES RAMOS, Chairman
                                         Board of Supervisors
8

9     SIGNED AND CERTIFIED THAT A COPY
10    OF THIS DOCUMENT HAS BEEN DELIVERED
      TO THE CHAIRMAN OF THE BOARD
11

12    LAURA H. WELCH, Clerk of the
      Board of Supervisors
13

14

15

16    STATE OF CALIFORNIA            )
                                     ) ss.
17    COUNTY OF SAN BERNARDINO       )

18         I, LAURA H. WELCH, Clerk of the Board of Supervisors of the County of San
19    Bernardino, State of California, hereby certify that at a regular meeting of the Board of
      Supervisors of said County and State, held on the 6th day of October, 2015, at which
20    meeting were present Supervisors: Robert A. Lovingood, James Ramos, Curt Hagman,
      Josie Gonzales, and the Clerk, the foregoing ordinance was passed and adopted by the
21    following vote, to wit:

22              AYES:         SUPERVISORS:    Lovingood, Ramos, Hagman, Gonzales
23
                NOES:         SUPERVISORS:    None
24
                ABSENT:       SUPERVISORS:    Rutherford
25

26

27

28

2DR6874
RFM:mhf

1    IN WITNESS WHEREOF, I have hereunto set my hand and affixed the official
2    seal of the Board of Supervisors this 6th day of October, 2015.

3

4                                        LAURA H. WELCH, Clerk of the
                                         Board of Supervisors of the
5                                        County of San Bernardino,
                                         State of California
6

7

8                                        Deputy

9    Approved as to Form:

10   JEAN-RENE BASLE
     County Counsel
11

12   By:
13        KENNETH C. HARDY
          Deputy County Counsel
14

15   Date:    10/15/15
16

17

18

19

20

21

22

23

24

25

26

27

28

2DR6874
RFM:mhf

3

1   **Lynn Macy "In Pro Per"**

2   **P.O. Box #103**

3   **Twin Peaks, Ca. 92391**

4   **(909) 744 -8480**

5                    **UNITED STATES DISTRICT COURT**
                     **CENTRAL DISTRICT OF CALIFORNIA**
6

7   **PLAINTIFF(S) NAMES                    )        CASE NO.: 5:24-cv-00668-AB-SHKx**
        **Plaintiff Lynn Macy            )**
8                                         **)**
9            **v                          )**
                                          **)**
10  **DEFENDANT(S) NAMES                  )**
        **Defendants Cedarpines Park Mutual Water Company;**
11      **and all persons' unknown Claiming Any Legal**

12      **or Equitable Right, Title, Estate, Lien**

13      **or Interest in the Property Described in**

14      **the Complaint Adverse to Plaintiff's Title,**

15      **or any Cloud on Plaintiff Title Thereto**

16      **and DOES 1 Through 10 Inclusive,**

17      **Defendants.**

18      **---------------------------------------------------------**

19

20              **COMPLAINT TO QUIET TITLE & FOR INJUNCTIVE RELIEF**

21

22       Plaintiff's complain & for causes of action alleges as follows:

23                                    I.

24       Plaintiff Lynn Macy, are, & at all times mentioned in this complaint are
residents of San Bernardino County, California.

25                                    II.

26       Defendants Cedarpines Park Mutual Water Company, are, & at all times
27  mentioned in this complaint are residents of San Bernardino County, California.

28

                                      -1-

III.

All Persons Unknown, Claiming Any Legal or Equitable Right, Title, Estate, Lien, or Interest in the Property Described in the Complaint Adverse to Plaintiff's Title, or Any Cloud on Plaintiff's Title Thereto & DOES 1 through 10, inclusive, & therefore sues them by those fictitious names. In addition to language in charging allegations that includes fictitiously named Defendants: Plaintiff is informed & believes on that basis alleges that each of the DOE Defendant's claims, or may claim, some interest in Plaintiff's real property described in this complaint. The names, capacities & relationships of DOES 1 through 10 will be alleged by amendment to this complaint when they are known.

IV.

Plaintiff is informed & believes, & on that basis alleges, that at all times mentioned in this complaint, Defendants were the agents & employees of their co-Defendants, & in doing the things alleged in this complaint were acting within the course & scope of that agency & employment.

V.

Plaintiff is the owner in fee & is in possession & control of real property & improvements located at 22437 Mojave River Road Cedarpines Park Ca 92322, 0 Mojave River Road Cedarpines Park Ca 92322, 22390 Mojave River Road Cedarpines Park Ca 92322, & more specifically described as Tract #2341 Cedarpines Highlands #5. APN# 034303101-0000.

VI.

Plaintiff is obtained fee simple title to the real property by a grant deed from KEILY, CECILE L TRUST, which is dated 07/06/2020, & recorded as document number 20200223351 in the official records of San Bernardino County, California.

VII.

Defendants claim an interest or estate in Plaintiff's above-described property, or a portion of it, by Water Company employee, specifically "Nate" – Maintenance Department put permanent & locked water test pipes equipment on Macy Family Property. Water test equipment was not installed properly with County permit or any authority from County, State or Macy Family. Cedarpines Park Water Company does not have legal service authority to ever be on Macy Family property. Defendants do not service Plaintiff's whatsoever, Plaintiff's property is outside of Defendants service area. Defendants clearly were shown boundary survey markers by Jeff Macy. The claim of Defendants is without any right whatsoever, & Defendants have no right, estate, title, or interest in the above-described property of Plaintiff, or any part of it. Defendants Cedarpines Mutual Water Company, a private owned company trespassed multiple times onto Plaintiff's religious property without permission, & put water meter on Plaintiff's property. Defendants trespassed again to dig hole with tractor & stole water meter off Plaintiff's property.

VIII.

Plaintiff seeks to quiet title to the disputed portion of Plaintiff's above-described property as of this filing date.

IX.

Defendants Cedarpines Park Mutual Water Company has no easements on Plaintiff's property. There are no utility easements according to San Bernardino County on Plaintiff's property. The Property Ownership Fairness Act includes a simple process to file a claim for compensation, designed to allow government & property owners to negotiate a settlement. The government has 90 days to decide whether to restore the property rights by waiving the land-use restriction or to pay the owner for taking those rights away. If the government chooses not

to apply the restriction, that waiver can be passed down to later owners of the property. If the government either rejects the claim letter or takes no action within 3 months, the owner can ask a court to order compensation. & because the government must pay a successful property owner's legal bill, bureaucrats have an incentive to cooperate & resolve disputes. Defendants cannot get a permit on someone else's property. If Defendants want to leave water test equipment on Plaintiff's property, Plaintiff request that Defendants must pay Plaintiff's $250,000 + $10,000 a year, for use & restriction of Plaintiff's property, or to remove any and all encroachments. The U.S. Constitution prohibits the government from taking private property for public use unless it first pays the landowner **"just compensation."** Defendants Water Company is **restricting the use** of Macys religious, nonprofit private property MacyLand (violating Macys Constitutional right), and is required to pay ***"just compensation"*** for the right to use land or to remove any and all encroachments.

The Takings Clause of the **Fifth Amendment**, provides that ***"…nor shall private property be taken for public use, without just compensation."*** A taking may occur when a government regulation **restricts the use of land**, even if the government does not invade or occupy the land. The Supreme Court has defined "public use" broadly, encompassing such purposes as economic development.

X.

Defendants Cedarpines Park Mutual Water Company have wrongfully interfered with Plaintiff's use of the portion of Plaintiff's above- described property.

{No Prescriptive Easements Allowed If "exclusively used": must remove improvements.}

XI.

Plaintiff is informed & believes Defendants have been littering: dumping rusted/bent water pipes & base rock on Plaintiff's property. Defendants have

been parking their tractor on Plaintiff's property. Plaintiff's suspect Defendants Water Company of stealing Plaintiff's fences. Plaintiff's family was on Macy property cleaning up trash when Defendant's employee **"Nate" said to Plaintiffs son, "You can't have anything 15' from Water Company water test equipment."** Defendant's employee "Nate" also admitted to destruction of private property: taking Plaintiff's chains off & said, **"Nothing you can do about it!"** Defendant's Water Company is using water test equipment to disable Plaintiff's security systems. (Cables, chains). Defendant's water test equipment was not approved by water board district. Defendant's water test equipment is not being regulated by California water?

XII.

Defendants Cedarpines Park Mutual Water Company does not service Macy property. The Macy Family had a meeting with the Supervisors of the Water Company years ago; about how the Water Company does not service the Macy Family Property. The Supervisors of the Water Company said, "Water Company has no authority to give Macy Family Property water". The Water Company has never received permission from Macy Family, nor will it ever, keep permanent water bacteria test equipment on Macy property. Having no easement, authorization, or permission from Macy Family, Defendants Water Company trespassed and put in Property Encroachment; stealing and restricting Macy Family's use of land.

"Justice Robie in Harrison v Welch, a 2004 Third District Court of Appeal case, wrote: "We discern the rule that an exclusive prescriptive easement, which as a practical matter completely prohibits the true owner from using his land, will not be granted in a case (like this) involving a garden-variety residential boundary encroachment."

Robie concluded that the woodshed, made of railroad ties sunk into the ground, effectively excluded the Harrisons of any use of that portion of their property, & likewise, Denese Welch's planted trees, railroad tie planter boxes &

buried irrigation system completely prohibited the Harrisons from using that part of their Lot 8.

Because the encroachments essentially gave Welch exclusive use of that part of Lot 8, she was not entitled to a prescriptive easement. The woodshed & other improvements spilling over the mutual boundary line must be removed."

{Use Can't Prevent Owner from Meaningful Use of Its Land}

"Where a prescriptive easement denies the landowner any meaningful use of his property, courts will recognize that it has the same effect as taking ownership by adverse possession. In such cases, no such easement will be enforced. Accordingly, while a use may be modified to accommodate a natural evolution, it will not be permitted if doing so would effectively eliminate any meaningful use of the servient estate."

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

That Defendants be required to set forth each & every claim they may assert to Plaintiff's above-described property; Remove illegal water testing equipment. Remove everything off Macy's Land across existing survey line by Licensed EHE surveyors.

That this court determines the true & correct location of the boundary line. Impartial Surveyor Matthew Christian EHE license # L.S. 9410 officially filed with San Bernardino County. EHE #20-330. On September 2020 showing 5 clear tract markers of true boundary line.

That Plaintiff's title in & to Plaintiff's above- described property be quieted, that it be adjudged that the true & correct location of the boundary line between the above-described properties of Plaintiff's & that Defendants be

1  adjudged to have no right, title, estate, lien, or interest in or to the property of

2  Plaintiff, or any part of that property;

3

4       For a restraining order, preliminary injunction, & a permanent injunction

5  prohibiting Defendants Cedarpines Park Mutual Water Company; all persons'

6  Unknown Claiming Any Legal or Equitable Right, Title, Estate, Lien or Interest in the

7  Property Described in the Complaint Adverse to Plaintiff's Title, or any Cloud on

8  Plaintiffs Title Therefore from interfering with Plaintiff's use of the disputed portion of

9  Plaintiff's property;

10

       For Punitive damages, attorney fees & costs incurred in this action; and

11

12

       For such other & further relief as this court may deem just & proper.

13

14                                                DATE: _3/28/24_____

15

16                                                _Lynn Macy_

17                                                        (Lynn Macy)

18     VERIFICATION

19       I, Lynn Macy's son in the above-entitled action. I have read the foregoing I

20  & know the contents thereof. The same is true of my own knowledge, except as

21  to those matters which are therein alleged on information & belief, & as to those

22  matters, I believe it to be true.

23

24       I declare under penalty of perjury that the foregoing is true & correct & that

25  this declaration was executed at Lake Arrowhead, California.

26                      DATE: _3/28/24_____

27                      _Lynn Macy_ (Signature)

28


                                    -7-

**REPORT/RECOMMENDATION TO THE BOARD OF SUPERVISORS
OF SAN BERNARDINO COUNTY, CALIFORNIA
AND RECORD OF ACTION**

### October 6, 2015

FROM:       **TERRY W. THOMPSON, Director
Real Estate Services Department**

SUBJECT:    ADOPTION OF AN ORDINANCE OF THE COUNTY OF SAN BERNARDINO
GRANTING A REVENUE FRANCHISE TO CEDARPINES PARK MUTUAL
WATER COMPANY

RECOMMENDATION(S)
Adopt **Ordinance No. 4289** relating to granting a revenue franchise to Cedarpines Park Mutual
Water Company in the unincorporated area of Cedarpines Park for the period commencing on the
effective date of the ordinance granting the franchise and terminating fifteen years thereafter,
which was introduced on September 15, 2015, Item No. 92.
(Presenter: Terry W. Thompson, Director, 387-5252)

BACKGROUND INFORMATION
This item will adopt an ordinance, introduced during a public hearing on September 15, 2015,
Item No. 92, granting a fifteen-year water franchise to Cedarpines Park Mutual Water Company,
which will become effective and commence thirty days from adoption.

(KK: 677-8751)

Page 1 of 1

cc:   w/ordinance
      RES-Thompson
      County Counsel-Hardy
      File - Franchise/Water/Cedarpines
          Park Mutual Water Co. w/attach
jr    10/7/15

      **ITEM 88**

Record of Action of the Board of Supervisors

**APPROVED (CONSENT CALENDAR)
COUNTY OF SAN BERNARDINO
Board of Supervisors**

| MOTION | SECOND | ABSENT | AYE | MOVE | AYE |
|--------|--------|--------|-----|------|-----|
|        | 1      | 2      | 3   | 4    | 5   |

LAURA H. WELCH, CLERK OF THE BOARD

BY _____

DATED: October 06, 2015

Rev 7-29-14

ORDINANCE NO. 4289

AN ORDINANCE OF THE COUNTY OF SAN BERNARDINO,
STATE OF CALIFORNIA, GRANTING TO CEDARPINES
PARK MUTUAL WATER COMPANY, ITS SUCCESSORS
AND ASSIGNS, A FRANCHISE TO CONSTRUCT, USE, AND
REPAIR WATER PIPELINES FOR CEDARPINES PARK
MUTUAL WATER COMPANY ALONG, ACROSS, UPON AND
UNDER THE PUBLIC STREETS WITHIN THE COUNTY OF
SAN BERNARDINO; AND REPEALING AGREEMENT NO.
00-1081.

The Board of Supervisors of the County of San Bernardino, State of California,
ordains as follows:

SECTION 1.  The Board of Supervisors of the County of San Bernardino finds as
follows:

(a)     Cedarpines Park Mutual Water Company transports water by means of
pipe or pipelines; and

(b)     Cedarpines Park Mutual Water Company has applied for a franchise from
the County of San Bernardino to construct and use certain rights-of-way and property
for its transportation of water.

SECTION 2.  Cedarpines Park Mutual Water Company is hereby granted a
franchise for a term not to exceed fifteen (15) years from the date of acceptance of said
franchise and subject to the "Terms and Conditions of Franchise Issued to Cedarpines
Park Mutual Water Company" and acceptance thereof by Cedarpines Park Mutual
Water Company, as attached hereto and incorporated herein by this reference.

SECTION 3.  County of San Bernardino Agreement No. 00-1081 is hereby
repealed in its entirety.

2DR6874
RFM.mhf

1

FRANCHISE AGREEMENT BETWEEN SAN BERNARDINO COUNTY AND

CEDARPINES PARK MUTUAL WATER COMPANY FOR WATER FRANCHISE

## CHAPTER 1 - GENERAL REGULATIONS

Parts:

| | |
|---|---|
| 1. | General Provisions and Definitions |
| 2. | Compensation |
| 3. | Construction |
| 4. | Water Pipelines – Special Provisions |

## PART 1 - GENERAL PROVISIONS AND DEFINITIONS

Sections:

1   Definitions
2   Continuation of Provisions
3   General Conditions for Franchises
4   Term of Franchise
5   Acceptance of Franchise
6   Grant Nonexclusive – Compliance With Regulations
7.   Insurance Requirements and Indemnification
8.   Faithful Performance Bond
9.   Alternative to Bonds– Assignment of Savings and Loan Certificates or Shares
10.  Grant and Forfeiture Conditions
11.  Costs of Technical Assistance
12.  Sale, Transfer, Stock Transfer, Lease, Assignment, Hypothecation or Change in Control of Franchise – Conditions
13.  Overlapping Franchise Areas Held by One Franchisee
14.  Franchise Fee Report Requirements
15.  Grounds for Suspension or Forfeiture – Hearing
16.  Permit for Performance of Work
17.  Severability

**1 Definitions:** For the purposes of this Agreement, the following terms, phrases, words and their derivations shall have the meanings given herein. When not inconsistent with the context, words used in the present tense include the future tense, words in the plural number include the singular number, and words in the singular number include the plural number.

A.   "Agreement" means the document containing the terms and conditions under which a public or nonpublic utility holds a franchise and operates within the County.

B.   "Board" means the Board of Supervisors of the County of San Bernardino.

1

C.  "County" means the County of San Bernardino, State of California.

D.  "Department" means the Real Estate Services Department, Franchise Authority, County of San Bernardino.

E.  "Director" means Director of the Real Estate Services Department, County of San Bernardino or his designee.

F.  "Facilities" or "appurtenances" means all property of the franchisee, including, but not limited to, pipelines, pump stations, and service connections with the franchisee's facilities, whether installed by the franchisee or not, which are erected, constructed, laid, operated or maintained in, upon, over, under, along or across any highway pursuant to any right or privilege granted by the franchise.

G.  "Franchisee" or "grantee" means the person to whom a franchise is granted.

H.  "Franchise payment period" is the period from January 1st through December 31st of the year granting the franchise, or fractional calendar year, and each calendar year thereafter, during the term of the franchise.

I.  "Franchise report period" means the period from January 1st through December 31st of the year granting the franchise, and each year thereafter, during the term of the franchise.

J.  "Gross Annual Receipts" means all revenue, as determined in accordance with generally accepted accounting principles, which is received, directly or indirectly, by Company from or in connection with the sale, operation or distribution of water.  Revenue shall not include: income received from the sale of merchandise; investment or interest income; bad debt write-offs or bad check collection fees or re-deposited checks.

K.  "Highway" means any public highway, freeway (except a state freeway), street, road, alley, lane or court or other public easement, and any public places, and above and below the same, which now exists or which may hereafter exist, in any unincorporated territory of the County for which the County has the authority to grant a franchise.

L.  "Main" means any pipeline or conduit laid in, along or approximately parallel with any highway for the collection, transmission or distribution of any substance or commodity.

M.  "Person" means any individual, person, firm, partnership or corporation.

N.  "Road Department" means the Transportation Department and/or the Special Districts Department of the County of San Bernardino.

2

O. "Service connection" means the wire, pipes or conduits connecting the building or place where the service or commodity supplied by the franchisee is used or delivered, or is made available for use or delivery, with the supply line or supply main in the highway, or with such supply line or supply main on private property.

**2 Continuation of Provisions:** The provisions of this Agreement, insofar as they are substantially the same as existing provisions relating to the same subject matter, shall be construed as restatements and continuations thereof, and not as new enactments.

**3 General Conditions for Franchises:** Every franchise hereafter granted by the County to lay or construct, from time to time, and for the period covered by the franchise, to maintain, operate, renew, repair, change the size of, remove or abandon in place, pipes and pipelines for water, wastewater, other liquid substances, for any purpose, together with all manholes, valves, appurtenances and service connections necessary or convenient for the operation of said pipes or pipelines in, under, along, or across any and all highways, shall be subject to the rules, regulations, restrictions and terms and conditions of this Agreement.

**4 Term of Franchise:** The term of the franchise shall be fifteen (15) years.

**5 Acceptance of Franchise:** The franchisee shall, within thirty (30) days after the adoption of the Resolution granting the franchise, file with the Clerk of the Board a written acceptance of the terms and conditions of said Agreement, use will constitute acceptance.

**6 Grant Nonexclusive – Compliance with Regulations:** The granting of the franchise shall not be construed to prevent the County from granting any identical or similar franchise to any person other than the franchisee. Nothing herein contained shall be construed to exempt the franchisee from compliance with all ordinances, resolutions, rules or regulations of the County now in effect, or which may be hereafter adopted, which are not inconsistent with the terms of the franchise.

**7 Insurance Requirements and Indemnification:** On or before commencement of any franchise operations, franchisee shall obtain, or provide satisfactory evidence of having, policies of liability, auto, and Workers' Compensation insurance from companies authorized to transact business in the State of California by the Insurance Commissioner of California.

A. 1. The franchisee shall, at its sole expense, indemnify, defend, and hold harmless the County, its agents, officers and employees from and against any and all liability, expense, including defense costs and legal fees, and claims for damages of any nature whatsoever, including, but not limited to, bodily injury, death, or property damage, including property of the franchisee, arising from or connected with, either directly or indirectly, franchisee's activities, operations or

3

services hereunder, including any Workers' Compensation suits, liability, or expense arising from or connected with services performed on behalf of franchisee by any person pursuant to this franchise.

2. Nothing herein shall be deemed to prevent the parties indemnified and held harmless herein from participating in the defense of any litigation by their own counsel at the franchisee's sole expense. Such participation shall not under any circumstances relieve the franchisee from its duty of defense against liability or of paying any judgment entered against such party.

B. Without limiting franchisee's indemnification of County pursuant to Part 1, Section 7 A, franchisee shall provide and maintain at its own expense during the term of the franchise, the following programs of insurance covering its operations hereunder. Such insurance shall be provided by insurers satisfactory to the Director and satisfactory evidence of such programs shall be delivered to the Department, on or before the effective date of the franchise. Insurance policies and certificates evidencing coverage shall name the County of San Bernardino, its officers, agents, and employees as additional insured with respect to franchisee's operations under the franchise. Such evidence shall specifically identify the franchise and shall contain express conditions that the County is to be given written notice by registered mail at least thirty (30) days in advance of any modification or termination of any program of insurance.

1. **Liability:** Such insurance shall be primary to and non-contributory with any other insurance maintained by County and shall name the County of San Bernardino, its officers, agents, and employees as additional insured, and shall include:

a. Comprehensive General Liability Insurance endorsed for Premises-Operations, Products/Completed Operations, Contractual, Broad Form Property Damage, and Personal Injury with a combined single limit of not less than $1,000,000 per occurrence. If the above insurance is written on a Claims Made Form, such insurance shall be endorsed to provide an extended reporting period of not less than five (5) years following termination of the policy.

2. **Auto:** Comprehensive Auto Liability Insurance endorsed for all owned, non-owned and hired vehicles with a combined single limit of at least $1,000,000 per occurrence.

3. **Workers' Compensation:** A program of Workers' Compensation Insurance in an amount and form to meet all applicable requirements of the Labor Code of the State of California, including Employers Liability Insurance with a $250,000 limit, covering all persons providing services on behalf of franchisee and all risks to such persons under the franchise. Franchisee may provide, if applicable, a certificate of consent to self-insure, issued by the Director of Industrial Relations

4

of the State of California. Should franchisee utilize the self-insurance provision of this Section, and franchisee's Certification of Consent to Self-insure expires or is revoked, franchisee shall be required to provide a program of Workers' Compensation Insurance upon said expiration or revocation.

   a. Franchisee shall furnish the Director, prior to commencement of any franchise operations, either certified copies of said policies required by Subsection B of this Section, or a certificate of insurance for each of the required policies executed by the company issuing the policy, certifying that the policy is in force.

   b. No franchise operations shall commence until franchisee has complied with the aforementioned provisions of this Section, and any such operations shall be suspended during any period that franchisee fails to maintain said policies in full force and effect.

   c. It shall be the franchisee's obligation to provide evidence of current insurance policies.

8 **Faithful Performance Bond:** Within five (5) days after the effective date of the Agreement granting the franchise, franchisee shall file, and thereafter at all times during the life of the franchise keep on file with the Director, a corporate surety bond running to the County, and also to any incorporated city or public entity which may become entitled to the benefits herein reserved in the franchise by virtue of future incorporations or annexations, in the penal sum of $3,000.00, or such other sum as may be specifically provided for in the Agreement granting the franchise, with surety to be approved by the Director, conditioned that franchisee shall well and truly observe, fulfill and perform each condition of the franchise and that in case of any breach of condition of the bond, as an alternative to revocation of the franchise, the whole amount of the penal sum shall be deemed to be liquidated damages and shall be recoverable from the principal and sureties of the bond. If said bond is not filed within five (5) days after the effective date of the Agreement granting the franchise, the award of the franchise may be set aside and the Agreement granting the franchise may be repealed at any time prior to the filing of said bond, and any money paid in consideration for award of the franchise shall be deemed forfeited. In the event that the bond, after it has been filed, shall at any time during the life of the franchise, in the opinion of the Director, become insufficient, franchisee agrees to renew said bond, with sureties to be approved by the Director, within ten (10) days after written notice to do so from the Director.

9 **Alternative to Bonds– Assignment of Savings and Loan Certificates or Shares:**

   Letter of Credit or Security Fund: In addition to the performance bond required in Part 1, Section 9, the County may require a clean, irrevocable letter of credit or establishment of a security fund, to be maintained in an amount to be specified in this Agreement granting the franchise, as security for compliance with time and performance requirements of the franchise. In the event the County withdraws any funds from any such instrument(s), franchisee shall replenish the amount withdrawn

within ten (10) business days. The rights reserved with respect to a letter of credit or a security fund are in addition to all other rights of the County.

## 10 <u>Grant and Forfeiture Conditions</u>:

1. The franchise is granted and shall be held and enjoyed upon each and every condition contained in the Agreement granting the franchise and shall be construed against the franchisee.

2. In this Agreement and otherwise, the County reserves the right to suspend or revoke and terminate a franchise and all rights and privileges of a franchisee in the event of a material breach of its terms and conditions. In interpreting this Section, material provisions shall include all labeled as such and all others, which, under all the facts and circumstances indicated, are a significant provision of the Agreement. A material breach by franchisee shall include, but shall not be limited to, the following:

   a. Violation of any material provision of the franchise or any material rule, order, regulation or determination of the County made pursuant to the franchise;

   b. Practice of any fraud or deceit upon the County;

   c. Failure to complete system construction, reconstruction, or system extensions, as provided under the franchise;

   d. Failure to provide the types of facilities, equipment or services promised;

   e. Material misrepresentation of fact in the application for or negotiation of the franchise. The foregoing shall not constitute a material breach if in the opinion of the Director, the violation occurs without fault of the franchisee or occurs as a result of circumstances beyond its control. Franchisee shall not be excused by mere economic hardship nor by misfeasance or malfeasance of its shareholders, directors, officers or employees.

3. The Director, prior to any suspension or revocation and termination of the franchise, shall give to the franchisee not less than fifteen (15) days notice in writing of any default thereunder. If the franchisee does not, within the noticed period, begin the work of compliance, or, after such a beginning, does not prosecute the work with due diligence to completion, the Board shall hold a hearing, at which the franchisee shall have the right to appear and be heard. Notice of said hearing shall be given to franchisee by certified mail not less than fifteen (15) days before said hearing.

4. Upon the conclusion of the hearing, the Board may determine whether such conditions are material and essential to the franchise and whether the franchisee

is in default with respect thereto and may declare the franchise suspended or revoked and terminated.  No revocation and termination shall become effective less than thirty (30) days after the Board's declaration to revoke and terminate; and no lapse of time, expenditure or any other thing shall be deemed to give the franchisee any vested right or interest in the continuation of the franchise granted.

**11** **Costs of Technical Assistance:** Franchisee shall pay the reasonable costs incurred by the County for any technical assistance deemed necessary by the County for obtaining independent verification of technical compliance with all franchise imposed standards. County shall not incur any such costs without fifteen (15) day written notice to franchisee and without prior consultation with the franchisee.

**12** **Sale, Transfer, Stock Transfer, Lease, Assignment, Hypothecation or Change in - Control of Franchise - Conditions:**

A. The franchisee shall not sell, transfer, assign, lease, hypothecate, place in trust, or change the control of the franchise or any part thereof, except with the prior written approval of the Director, and after payment of the fees required by Part 2, Section 21.  The Director's consent shall not be unreasonably withheld.  As used in this Section, "transfer" includes stock transfer and "control" includes actual working control in whatever manner exercised.

B. Franchisee shall inform the Director of any pending sale, transfer, lease, assignment, hypothecation, placing in trust, or change in control, except as excluded in Subsection D.  Transferor and transferee must file an application for Director's consent to transfer control of or assign the franchise as set forth in Subsections F and G.  Such applications shall be accompanied by the fees required in Part 2, Section 21 and shall be signed by duly authorized representative(s) with the signature(s) acknowledged by a notary.

C. Franchisee shall file with Director a certified copy of the duly executed instrument of such sale, transfer, assignment, lease, hypothecation, trust or change in control within thirty (30) days of the effective date of such transaction. If such instrument is not filed with the Director within thirty (30) days after the effective date of such transaction, the franchise shall be subject to forfeiture, and the Board may proceed to repeal the franchise.

    1.  As a condition to the granting of consent to such sale, transfer, assignment, lease, hypothecation, trust, or change in control, the Board may impose such additional terms and conditions upon the franchise and upon the grantee or assignee which the Director recommends or the Board deems to be in the public interest.  Nothing herein contained shall be construed to grant to the franchisee the right to sell, transfer, assign, lease, hypothecate, place in trust, or change control of the franchise or any part thereof, except in the manner aforesaid.  This

7

Section applies to any assignment, whether by operation of law, by voluntary act of the franchisee, or otherwise.

D. Shareholders and/or partners of the franchisee may transfer, sell, exchange, assign or divest themselves of any interest they may have. However, in the event any such sale, transfer, exchange, assignment, divestment or other change gives control of twenty-five percent (25%) or more interest in franchisee's operations to any person, corporation, partnership or legal entity other than the holder of the controlling interest on the effective date of the franchise, or the effective date of the last assignment, sale, transfer, or other action requiring the County's consent, then prior approval of the current transaction shall be obtained from the County.

E. Consent to any such transfer shall only be refused if the Director finds that the franchisee is in noncompliance with terms and conditions of the franchise and/or if the transferee is lacking in financial ability to continue the operations authorized by the franchise.

F. Transferor's (assignor's) application shall include:

  1.  Identification and ownership of transferee. In its application for approval, transferor shall identify the transferee and its ownership as if transferee were an applicant for an initial grant.

  2.  Financial Statements. Current financial statements showing the financial condition of the franchisee as of the date of the application. Transferor shall also agree to submit financial statements showing the condition of franchisee as of the closing. Said financial statements must have been audited and certified by an independent certified public accountant, and shall be submitted within ninety (90) days of the closing.

  3.  The submittal of a final accounting and report of franchise fees set forth in Part 1, Section 16, within thirty (30) days of the effective date of approval of transfer/assignment of the franchise, or as of the date of close of the transfer/assignment. The transferee shall be responsible for any underpayment and shall be entitled to a credit for any overpayment.

G. Transferee's (assignee's) application shall include:

  1.  Current financial statements of the proposed transferee and other information and data, including but not limited to, sources of capital, as will demonstrate conclusively that transferee has all the financial resources necessary to acquire the pipeline system, carry out all of the terms and conditions of the franchise, remedy any and all defaults and violations of the provisions of this Chapter and Agreement granting the franchise in the transferor's past and present operations and make such other improvements and additions as may be required or

proposed in the services and facilities, including but not limited to, upgrading, rebuilds, and extensions of facilities and equipment.

2. A statement of any changes in rates and charges which transferee proposes to make during the first three (3) years following approval of the transfer or assignment.

3. An express and unconditional written acceptance of the terms and conditions of the existing franchise, and the franchise as modified, as a condition to the transfer, accompanied by such guarantees as meet the requirements of Part 1, Section 5.

4. A summary of the plans and commitments of the transferee to remedy the specific defaults and violations, if any, in the operations of transferor under the existing franchise.

**13** <u>**Overlapping Franchise Areas Held By One Franchisee:**</u> In the event a franchisee acquires an additional franchise which results in the overlapping, in whole or in part, of any franchise service area(s), the Director shall determine which of the two (2) franchises shall prevail as to the overlapping area(s), and the franchise service area granted in the non-prevailing franchise shall be amended to delete the overlapping area(s).

**14** <u>**Franchise Fee Report Requirements:**</u> The franchisee, during the term of the franchise, within ninety (90) days after the expiration of each calendar year, shall file with the Department, the following reports:

A. Four (4) copies of a report, verified by the oath of a duly authorized representative of the franchisee, setting forth in detail the computation of the amount of the franchise payment due for the immediately preceding calendar year.

Franchisee shall also provide, a detailed profit and loss statement showing all gross receipts and expenses derived from the franchisee's franchise operations during the reporting period; and, upon request, such additional data as is reasonably necessary in the opinion of the Director and the County Auditor-Controller to calculate or verify the calculation of the annual payment.

B. A street and highway map or maps of any convenient scale on which shall be plotted the location of the entire distribution system or systems covered by the report as of the last day of the franchise payment period, with that part of said system or systems located in County highways indicated by distinctive coloration or symbols.

If there are no pipeline additions or pipeline abandonment within the system for the reporting year, reference to the preceding year's map submission shall be sufficient.

9

C. A report, in duplicate, showing the lineal length and internal diameter of pipelines installed or abandoned, segregating such footage as to new mains laid, old mains removed, old mains abandoned in place, pursuant to each excavation permit during the immediately preceding franchise report period. The following types of reports shall be sufficient to satisfy the report requirement:

1. Copies of the excavation permits acquired from the appropriate County Department obtained for doing any work under the franchise, indicating the required information stated in Subsection C, for which a permit is required during the immediately preceding franchise report period.

2. An internal report showing the amount of pipeline footage installed and/or abandoned pipeline during the immediately preceding franchise report period.

**15 <u>Grounds for Suspension or Forfeiture – Hearing</u>:** The franchise is granted and shall be held and enjoyed upon each and every condition contained in the Agreement granting the franchise, and shall be strictly construed against the franchisee. Any neglect, failure, or refusal by the franchisee to comply with any of the conditions of the franchise shall constitute grounds for the suspension or forfeiture thereof. The Board, prior to any suspension or forfeiture of the franchise, shall give the franchisee not less than fifteen (15) days notice in writing.

A. If the franchisee does not, within the noticed period, begin the work of compliance, or after such beginning does not prosecute the work with due diligence to completion, the Board may hold a hearing, at which the franchisee shall have the right to appear and be heard, and thereupon the Board may determine whether such conditions are material and essential to the franchise and whether the franchisee is in default with respect thereto and may declare the franchise suspended or forfeited. Notice of said hearing shall be given to the franchisee by certified mail not less than fifteen (15) days before said hearing.

**16 <u>Permit for Performance of Work</u>:** Notwithstanding the granting of a franchise, the franchisee shall not be authorized to do any work under the franchise for which the issuance of a permit is required unless a permit is issued for such work.

**17 <u>Severability</u>:** If a court of competent jurisdiction holds any provision of the franchise invalid, the remainder of the franchise shall not be affected thereby.

**PART 2 - COMPENSATION**

**<u>Sections</u>:**

18    Rates
19    Franchise Fees
20    Proration of Payments

21    Prompt Payment – Delinquency Charge
22    Record Keeping Requirements
23    Audit

**18 Rates:** As consideration for the franchise granted, the franchisee shall pay to the County, the following:

**General:** In the case of an initial grant of franchise, the franchisee shall pay to the County an initiation fee based upon the actual costs incurred in the execution of the franchise, and the sum of money sufficient to reimburse the County for all publication expenses incurred with the granting of the franchise, within thirty (30) days after the Board adopts the Agreement granting the franchise.

**19 Franchise Fees**: The franchisee of any franchise awarded to a water company, as further consideration for the franchise granted, shall pay to the County, two percent (2%) of the gross annual receipts of the franchisee arising from the use, operation, or possession of the franchise. These receipts shall include all revenue, as determined in accordance with generally accepted accounting principles, which is received, directly or indirectly, by Company from or in connection with the sale, operation or distribution of water.   Revenue shall not include: income received from the sale of merchandise; investment or interest income; bad debt write-offs or bad check collection fees or re-deposited checks.

A.   Such percentage shall be payable annually during the life of the franchise, according to the "franchise payment period" as defined in Subsection H of Part 1, Section 1, and shall be due within fifteen (15) days after the time for filing of the report as defined in Part 1, Section 14;

B.  Provided, however, that if the franchise is a renewal, continuation or extension of a right already in existence, the payment of said percentage of gross receipts shall accrue from the effective date of the Agreement granting the franchise and shall be due within thirty (30) days after the time for filing of the statement.

C.  As used above, the phrase "two percent (2%) of the gross annual receipts of the Franchisee" shall be construed as that similar phrase is found in Sections 6006 and 6231 of the Public Utilities Code of the State of California.

1.  The County reserves the right to change its fees at five (5) year intervals from the effective date of the Agreement granting the franchise, after a public hearing determines that good cause exists and such action is not in conflict with the laws of the State of California.

2.  Amendment of Franchise Act of 1937.  If the Franchise Act of 1937 (Public Utilities Code Sections 6201-6302) is amended to increase the franchise payment formula, then the franchise payment formula shall be adjusted in conformity with the amended formula effective with the franchise fee due for the calendar year beginning closest to the effective date of such amendment.

3.  Amendment or enactment of other applicable laws.  If any applicable law, other than the Franchise Act of 1937, is amended to increase the franchise payment formula, then the franchise payment formula set forth herein shall be adjusted in conformity with the new formula beginning with the franchise fee due for the calendar year beginning closest to the effective date of such amendment; provided, however, that if such higher franchise payment formula is conditioned upon or enacted in consideration of other obligations, limitations, or requirements imposed upon the grantor of the franchise, then those obligations, limitations and requirements shall also become part of the franchise granted herein.

**20 <u>Proration of Payments</u>:** In the event of abandonment of facilities with the approval of the County as provided herein, or in the event of removal of such facilities by the franchisee, the payments otherwise due the County for occupancy of the roads or highways by such facilities shall be prorated for the calendar year in which such removal or abandonment occurs as of the end of the calendar month in which removal or abandonment took place.

**21 <u>Prompt Payment – Delinquency Charge</u>:** In the event franchisee fails to make the payments for the franchise on or before the dates due, as an alternative to revocation of the franchise, franchisee shall pay as additional consideration the following amount: a sum of money equal to ten percent (10%) of the amount due.   Said sum shall be due within thirty (30) days after written demand from the County, and failure to pay such charge shall be grounds for forfeiture of the franchise.

**22 <u>Record Keeping Requirements</u>:** Franchisee shall keep and preserve for a period of five (5) years subsequent to the date of the most recent franchise fee determination ascertained by an audit made by the County or on its behalf, all records necessary to determine the amount of such franchise fees or other payments due under Part 2, Section 21 above. Franchisee, upon demand by County, shall make such records available for inspection by County or its authorized representative.

A. At all reasonable times, the franchisee shall permit County, or its duly authorized representative, to examine all property that the franchisee has erected, constructed, laid, operated, or maintained pursuant to the franchise, together with any appurtenant property of the franchisee, and to examine and transcribe any and all books, accounts, papers, maps, and other records kept or maintained by the franchisee or under its control which relate to the operations, affairs, transactions, property or financial condition of the franchisee with respect to the franchise.

**23 <u>Audit</u>:** The County Auditor/Controller-Recorder, or any qualified person designated by the County, upon reasonable advance notice to franchisee, at any reasonable time during regular business hours, may make examination at the franchisee's office or offices of its books and records for the purpose of verifying the franchise fees set forth in the statement required herein, subject to the following terms and conditions:

1. All books and records subject to examination by the County Auditor/Controller-Recorder, or other qualified person designated by the County, shall be made available within the franchisee's office where they are kept.

2. Records need not be made available until County executes and delivers to franchisee written confirmation that the County's request to examine the books and records is made pursuant to its audit rights herein and written confirmation that County will use the information obtained only for purposes of the audit, will not disclose any information it obtains to third parties without the prior written consent of franchisee, and that it will maintain the confidentiality of any information reasonably designated by the franchisee as confidential. Nothing herein shall be construed to require franchisee to make available information which constitutes private or confidential information pertaining to specific customers of franchisee, without the prior written consent of the customer(s) involved.

3. County shall provide franchisee with the results of its audit. In the event County's audit reveals an error in the franchise fee amount set forth in the statement being audited, and said error is in excess of two per cent (2%) of the amount of payment set forth in the statement in question, the following provisions shall be applicable:

   a. if the audit reveals that an additional franchise fee amount is due, and if franchisee agrees with such determination, the additional franchise fee shall be paid within fifteen (15) business days after County's written demand therefor and the franchisee shall assume all reasonable costs for said audit.

   b. if the audit reveals that there was an overpayment of the franchise fee, then County shall refund the amount of the overpayment within fifteen (15) business days after franchisee's written demand therefor.

4. In the event of a disagreement between the parties, each party shall have all of the rights and remedies provided by the franchise and by law.

## PART 3 - CONSTRUCTION

**Sections:**

24   General Regulations
25   New or Replacement Installations
26   Highway Work – Conditions and Requirements
27   Annual Completion Statement
28   Emergency Equipment and Personnel
29   Relocation of Pipelines and Appurtenances
30   Removal or Abandonment of Facilities – Procedures
31   Removal or Abandonment of Facilities – Failure to Comply – Remedies

24 **General Regulations:** Pipelines and appurtenances shall be constructed and maintained in a good workmanlike manner, in conformity with the terms and conditions of Chapter 7 of Division 4 of Title 1 of the County Code, or any other ordinance, resolution, agreement, rule or regulation, now or hereafter amended, adopted or prescribed by the County as may be applicable to the construction and maintenance of pipelines and appurtenances. All pipes laid under the franchise shall be of first class material.

25 **New or Replacement Installations:** New installations or replacements of pipelines and appurtenances and all other facilities necessary for the installation, operation, maintenance, and safety of pipelines and conduits shall be laid and maintained only pursuant to permits issued by the Road Department. All such installations or replacements shall be reviewed by the Director as to the most desirable location in the roads or highways of the County, and his decision shall be final and binding on the franchisee.

26 **Highway Work – Conditions and Requirements:** The work of constructing, laying, replacing, maintaining, repairing, abandoning or removing all pipelines and appurtenances authorized under the provisions of this Agreement in, over, under, along, or across any highway shall be done to the satisfaction of the Director, at the expense of the franchisee, and in accordance with the terms and conditions of this Agreement.

27 **Annual Completion Statement:** The franchisee shall submit an Annual Summary to the Department, identifying the permit or permits issued by the Road Department during the preceding calendar year, identifying the total length of pipeline, the construction of which was authorized under such permit or permits, the nominal internal diameter of the pipeline(s), and the total length of pipeline(s) or appurtenances actually laid.

28 **Emergency Equipment and Personnel:** At all times during the term of this franchise, the franchisee shall maintain or arrange for, on a twenty-four (24) hour-a-day basis, adequate emergency equipment and a properly trained emergency crew within a reasonable distance from any facilities installed or maintained pursuant hereto for the purpose of shutting off the pressure and the flow of the contents of such facilities in the event of an emergency resulting from an earthquake, act of war, civil disturbance, fire, flood, or any other cause whatsoever. The franchisee shall provide to the County a telephone number that is not available to the public whereby the County will be able to obtain status reports from the franchisee on a twenty-four (24) hour basis concerning interruptions of the supply of gas or electricity to any portion of the County.

29 **Relocation of Pipelines and Appurtenances**: The County reserves the right to change the grade, the width or to alter or change the location of any highway over which the franchise is granted. If any of the pipelines, facilities or appurtenances constructed, installed, or maintained by the franchisee pursuant to the franchise on, along, under, over, in, upon, or across any highway are located in a manner which prevents or interferes with the change of grade, traffic needs, operation, maintenance,

improvement, repair, construction, reconstruction, widening, alteration or relocation of the highway, or any work or improvement upon the highway, the franchisee shall relocate permanently or temporarily any such facility at no expense to the County, upon receipt of a written request from the Director to do so, and shall commence such work on or before the date specified in such written request, which date shall be not less than thirty (30) days from receipt of such written request. Franchisee shall thereafter diligently prosecute such work to completion; provided, however, if such highway is subsequently established as a state highway, thereafter and so long as such highway remains a state highway, no such change of location shall be required for a temporary purpose.

A. The County reserves the right for itself, and for all cities and public facilities which are now or may later be established, to lay, construct, repair, alter, relocate, and maintain subsurface or other facilities or improvements of any type or description in a governmental, but not proprietary, capacity within the highways over which the franchise is granted. If the County (or city or other public entity) finds that the location or relocation of such facilities or improvements conflicts with the facilities laid, constructed or maintained under the franchise, whether such facilities were laid before or after the facilities of the County (or such city or public entity), the franchisee shall, at no expense to the County, city or public entity, on or before the date specified in a written request from the Director, which date shall be not less than thirty (30) days after the receipt of such notice and request, commence work to change the location either permanently or temporarily of all facilities conflicting with such improvements to a permanent or temporary location in said highways, with such work to be approved by the Director; thereafter franchisee shall diligently prosecute such work to completion. If such highway is subsequently established as a state highway, and while it remains a state highway, the rights of the State of California shall be as provided in Section 680 of the Streets and Highways Code.

**30  Removal or Abandonment of Facilities – Procedures:** At the expiration, revocation or termination of this franchise or the permanent discontinuance of the use of all or a portion of its facilities, the franchisee shall, within thirty (30) days thereafter, make written application to the Director for authority either (1) to abandon all or a portion of such facilities in place; or (2) to remove all or a portion of such facilities.

Such application shall describe the facilities desired to be abandoned, their location with reference to County roads, and shall describe with reasonable accuracy, the physical condition of such facilities. The Director shall determine whether any abandonment or removal, which is thereby proposed, may be effected without detriment to the public interest and under what conditions such proposed abandonment or removal may be effected. The Director shall then notify the franchisee of his determinations.

A. Within thirty (30) days after receipt of such notice, the franchisee shall apply for a permit from the Road Department to abandon or remove the facilities.

B. The franchisee shall, within sixty (60) days after obtaining such permit,

commence and diligently prosecute to completion the work authorized by the permit.

31 <u>Removal or Abandonment of Facilities – Failure to Comply – Remedies:</u>

A.  If any facilities to be abandoned "in place", subject to prescribed conditions, shall not be abandoned in accordance with all such conditions, the Director may make additional appropriate orders, including an order that the franchisee shall remove any or all such facilities. The franchisee shall comply with such additional orders.

B. In the event that the franchisee fails to comply with the terms and conditions of abandonment or removal as may be required by this Agreement, and within such time as may be prescribed by the Director, then the County may remove or cause to be removed such facilities at the franchisee's expense. The franchisee shall pay to the County the cost of such work, plus the current rate of overhead being charged by the County for reimbursable work.

C. If at the expiration, revocation or termination of this franchise, or the permanent discontinuance of the use of all or a portion of its facilities, the franchisee, within thirty (30) days thereafter, fails or refuses to make written application for the above-mentioned authority, the Director shall make the determination as to whether the facilities shall be abandoned in place or removed. The Director shall then notify the franchisee of his determinations. The franchisee shall thereafter comply with the provisions of Part 3, Section 30.

## PART 4 – WATER PIPELINES – SPECIAL PROVISIONS

<u>Sections:</u>

| | |
|---|---|
| 32 | Rights Granted |
| 33 | Plan Approval – By County Fire Department |
| 34 | Plan Approval – Conditions |
| 35 | Plan Approval – Exceptions Authorized |
| 36 | Fire Hydrants – Maintenance Agreement |

**32 <u>Rights Granted</u>:** The franchisee holding a franchise for water pipelines shall have the right, during the term of the franchise, to make service connections with all property adjoining highways and to furnish and distribute water through said pipes and pipelines to all the unincorporated territory adjacent to said pipelines for any purpose.

**33 <u>Plan Approval – By County Fire Department</u>:** All new pipelines, replacements, and extensions for domestic water service shall be constructed, laid, and designed according to plans approved by the County Fire Chief.

**34 <u>Plan Approval – Conditions</u>:** The County Fire Chief shall approve such plans if the pipelines to be laid, extended, or replaced are so designed in conjunction with related facilities and the location of fire hydrants that they comply with required domestic demands and fire flows indicated by the Chief.

35 <u>Plan Approval – Exceptions Authorized</u>: The County Fire Chief may grant an exception to the requirements of Section 34 above where there are practical difficulties or unnecessary hardships in carrying out the requirements of said Section.

36 <u>Fire Hydrants – Maintenance Agreement</u>: As further consideration for the granting of the franchise, the franchisee agrees that the maintenance, relocation, repair and replacement of each and every fire hydrant within its area of service shall be provided for in an agreement between the franchisee and the County.

Cedarpines Park Mutual Water Company by execution hereof by its duly authorized officer, accepts the franchise granted hereunder in accordance with the Terms and Conditions of Franchise to Cedarpines Park Mutual Water Company as set forth herein;

Name: _____

Title: _PRESIDENT_____

Date: _8/12/2015_____

1    SECTION 4.  The Clerk of the Board is directed to publish this ordinance in the

2    manner and within the time prescribed by law.

3

4    SECTION 5.  This ordinance shall take effect thirty (30) days from the date of

5    adoption.

6

7    JAMES RAMOS, Chairman

8    Board of Supervisors

9    SIGNED AND CERTIFIED THAT A COPY

10   OF THIS DOCUMENT HAS BEEN DELIVERED

11   TO THE CHAIRMAN OF THE BOARD

12   LAURA H. WELCH, Clerk of the

      Board of Supervisors

13

14

15

16   STATE OF CALIFORNIA      )

                          ) ss.

17   COUNTY OF SAN BERNARDINO )

18

19       I, LAURA H. WELCH, Clerk of the Board of Supervisors of the County of San
Bernardino, State of California, hereby certify that at a regular meeting of the Board of

20   Supervisors of said County and State, held on the 6th day of October, 2015, at which
meeting were present Supervisors: Robert A. Lovingood, James Ramos, Curt Hagman,

21   Josie Gonzales, and the Clerk, the foregoing ordinance was passed and adopted by the
following vote, to wit:

22

23          AYES:      SUPERVISORS:  Lovingood, Ramos, Hagman, Gonzales

24          NOES:      SUPERVISORS:  None

25        ABSENT:     SUPERVISORS:  Rutherford

26

27

28

2DR6874
RFM:mhf

1      IN WITNESS WHEREOF, I have hereunto set my hand and affixed the official
2 seal of the Board of Supervisors this 6th day of October, 2015.

3

4                    LAURA H. WELCH, Clerk of the
                          Board of Supervisors of the

5                    County of San Bernardino,
                          State of California

6

7

8                          Deputy

9 Approved as to Form:

10 JEAN-RENE BASLE
   County Counsel

11

12 By:

13    KENNETH C. HARDY
     Deputy County Counsel

14

15 Date:  10/15/15

16

17

18

19

20

21

22

23

24

25

26

27

28

2DR6874
RFM:mhf

3

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Lynn Macy | CASE NUMBER |
| | 5:24-cv-00668-AB-(SHKx) |
| PLAINTIFF(S) | |
| v. | |
| Cedarpines Park Mutual Water Company, et. al., | **ORDER VACATING REFERENCE TO MAGISTRATE JUDGE** |
| DEFENDANT(S). | |

IT IS ORDERED that

☐   Reference to the above case to United States Magistrate Judge _____
pursuant to General Order 05-07 is hereby vacated.  All further proceedings in this action shall be before the District Judge assigned.  The case is referred to the same Magistrate Judge for discovery.

☑   Reference to the discovery Magistrate Judge is hereby vacated.  The above case is referred to a Magistrate Judge pursuant to General Order 05-07 for a Report and Recommendation.

Dated:  5/17/2024 _____          _____
                                                    United States District Judge

**NOTICE TO COUNSEL**

Pursuant to the above order, this case has been reassigned to Magistrate Judge  Shashi H. Kewalramani _____

☑   for a Report and Recommendation.

☐   for any discovery matters which may be referred.

All documents subsequently filed in this case must reflect the case number: CV  5:24-cv-00668-AB-SHK _____

This is very important because documents are routed by way of the initials.

                                            Clerk, U. S. District Court

Dated:  5/17/2024 _____          By  Luis Rodriguez, (213) 894-3535 _____
                                                        Deputy Clerk

CV-114 (06/07)                                                                    Page 1 of 1

# Clinical Laboratory of San Bernardino, Inc.
## Celebrating 50 Years of Analytical Service 1967-2017

| | | | | |
|---|---|---|---|---|
| **Client:** | Cedarpines Park Mutual Water Company | | **Contact:** | Nathan Burwell |
| | P. O. Box 9259 | | **Phone:** | (909) 338-1821 |
| | Cedarpines Park CA, 92322 | | **Fax:** | (909) 338-7311 |
| | | | **System:** | 3610011 |
| **Project:** | Standard Analysis | | | |
| **Sub Project:** | Week 1 Analysis | | | |
| **Sampler:** | Brandon Haddox | | | |
| **Sampled:** | 03/05/24 | | | |
| **Received:** | 03/05/24 08:30 | | | |
| **Reported:** | 03/07/24 | | | |

**RESULTS**

| Laboratory ID | Sample Time | Sample Location | Cl Res (Field) mg/L | Total Coliform P/A | E. Coli P/A |
|---|---|---|---|---|---|
| 24C0316-01 | 7:25 | Sample Station #3 | 0.82 | A | A |
| 24C0316-02 | 7:40 | 545 Long Beach | 0.68 | A | A |

**A**   Absence of Bacteria
**P**   Presence of Bacteria

*Bridget Durand*

**Bridget Durand**

**Project Manager**

# Clinical Lab of San Bernardino, Inc.    Chain of Custody

21881 Barton Road Grand Terrace CA 92313  909 825-7693 / 516-A N 8th St. Lompoc CA 93436  805 737-7300

WO

2460316

WO 2-0-8

**Turn Around Time (TAT)**

**Analysis Requested**

Comments

| Client | Destination Laboratory |
|---|---|
| Cedarpines Park MWC | [ ] Clinical Grand Terrace / ELAP 1088 |
| Address: 21863 Crest Forest Dr. | [ ] Clinical Lompoc / ELAP 1678 |
| Cedarpines Park, CA 92322 | [ ] Other: |
| Client Contact: | |
| Phone No.: (760)762-6171  FAX No.: | |
| System No.: CA 3610011 | |
| Project: | |
| Sampled By: Brandon Heddox | |
| Comments: Week 2 Analysis | |

Analysis Requested columns:
- Residual
- Coliform

| | No. of Preserved Cont. |
|---|---|
| Total Containers | |
| ZnC4H6O4 | |
| Na2SO3 | |
| NaOH | |
| HCl | |
| HNO3 | |
| C6H8O6 | |
| NH4Cl | |
| Na2S2O3 | |
| Unpreserved | |
| Sample Type | |
| Matrix | |
| Container ID | |

| Date | Time | Sample Identification | Container ID | Residual | Coliform |
|---|---|---|---|---|---|
| 3-5 | 7:25 am | Sample Station #3 | 1 | X .82 | |
| 3-5 | 7:44 am | 545 Long Break | 2 | X .68 | |

Matrix: DW - Drinking Water  GW - Ground Water  SW - Surface Water  W - Water  WW - Wastewater  SWR - Stormwater Runoff  S - Sludge  O - Other
Use for Bacteria Samples / Sample Type: 1-Routine  2-Repeat  3-Replacement  4-Special  D-Distribution  W-Well     TAT: (10) Ten Day  (5) Five Day Rush  (2) Two Day Rush

| Relinquished By (Sign) | Print Name / Company | Date / Time | Received By (Sign) | Print Name / Company |
|---|---|---|---|---|
| Brandon Heddox | Brandon Heddox / CPPMWC | 3-5-24 8:20 am | CB | Olivia / CLSB |
| | | 3/5 0830 | | |

(Lab Use Only)    Lompoc Lab Receipt Temp.: _____ °C
Shipped Via:    [ ] Fed Ex  [ ] Golden State Overnight  [ ] UPS  [ ] OnTrac  [ ] USPS  [ ] Other _____
Condition:    [ ] On Wet Ice  [ ] On Blu Ice  [ ] Intact  [ ] Custody Seals    Samples / COC Checked By: _____
Receipt Comments:

Work Order Logged By: _____
Clinical Lab Receipt Temp.: 7.5 °C

Page ___ of ___

Thank you,

HEARING EXAMINER

**SAN BERNARDINO COUNTY**
Public Health
Environmental Health Services

www.SBCounty.gov
www.SBCounty.gov/dph/dehs

## WELLS - OFFICIAL INSPECTION REPORT

| FACILITY NAME | | | | REINSPECTION DATE Not Specified | INSPECTOR Amanda Reifer | DATE 8/19/2020 |
|---|---|---|---|---|---|---|
| LOCATION MOHAVE VIEW DR, CEDARPINES PARK, CA 92322 | | | | PERMIT EXPIRATION | IDENTIFIER: None SERVICE: 010 - WRITING - REPORT / LETTER | |
| TIME IN 7:45 AM | TIME OUT 8:00 AM | FACILITY ID Not Specified | RELATED ID CO0071826 | PE 4548 | RESULT: 00 - NOT APPLICABLE ACTION: 00 - NOT APPLICABLE | |

## WELLS - Non-Permitted Well Activity

Based on an inspection this day, the items marked below identify the violation(s) in operation or facilities which must be corrected. Failure to correct listed violation(s) prior to the designated compliance date may necessitate an additional inspection to be billed at the hourly rate as provided in the San Bernardino County Code, Schedule of Fees.

Administrative Order to Show Cause (OSC): The Permittee has the right to a hearing if requested in writing within 15 calendar days of receipt of this notice, to show cause why the permit to operate should not be suspended or revoked; otherwise the right to a hearing shall be deemed waived.

**See the following pages for the code sections and general requirements that correspond to each violation listed below.**

### No Violations Cited

### Overall Inspection Comments

write report from inspection on 8/17

**Total # of Images:** 0